## WILLIAM J. HANDY and HENRY J. TULL, *vs.* ISAAC JOHNSON

Declarations or acts accompanying or immediately following the commission of the act complained of are competent and proper evidence to explain such act.

The rule applicable to the *res gestœ* does not require the circumstance proposed to be given in evidence should have occurred at the precise time when the principal fact happened; if it arose either at the time or so soon thereafter as to constitute a part of the transaction, it serves to give color and definiteness to it.

Prayers which require the jury to decide the legal question of what is an assault, are for this reason erroneous.

When an assault is charged, the jury are to decide whether there was an intention to do any violence or injury.

If, in a threatening and rude or angry manner, a man points a sword or a fork at another, or shakes his fist in the face of the other within striking distance, attended with a present ability to strike, such act is an assault, though no stroke is given.

The jury cannot infer a want of intention to do violence or injury merely from the failure to strike, in the absence of any declaration or circumstances indicating an absence of such intention other than the fact that no blow was given.

If there are any declarations or circumstances tending to indicate a want of

intention to do violence or injury, the jury are bound to take them into consideration in deciding upon the intention.

Though the court below may have granted instructions and then declared there was no evidence to support the fact which the instructions authorised the jury to find, yet the appellants have no right to complain, if, *in point of fact*, there was no evidence to sustain the theory of the prayers.

APPEAL from the Circuit Court of Somerset county.

This was an action of *trespass vi et armis*, by the appellee against the appellants. The declaration contains two counts; the *first* charging a joint assault and battery by the defendants, and the *second* a joint trespass in breaking and entering the plaintiff's dwelling house. The defendants severed in their pleas and each pleaded *non cul.* to each count, and to the second they further pleaded leave and license to enter, given and granted by the plaintiff, on all which issues were joined. The defendants moved for a severance in the trial, but this motion the court refused to grant.

*1st Exception.* The plaintiff proved by his son, Joshua Johnson, the facts stated in the opinion of this court, and that Tull did not interfere in any manner to restrain Handy; and that the latter might have struck plaintiff had he intended to do so. The defendants objected to the admissibility of all that part of this testimony which related to what took place after the defendants left the house and while the witness was standing upon the door-steps, but the court (SPENCE, J.,) permitted it to go to the jury, and to this ruling the defendants excepted.

*2nd Exception.* The plaintiff further proved by Dize, that in 1850, or 1851, he met the defendants in the woods, and Handy said that Harvey, or the plaintiff's negroes, had been cutting timber on him, and that he, Handy, was going to plaintiff's room, and would give the damned old son of a bitch hell; that Handy then asked Tull to go with him, which the latter said he would do.

The defendants then proved, that in March 1848, the plaintiff's slaves had cut several trees on the land of the mother of Handy, and that the latter was the general agent of his mother. They also offered evidence by Bell, that Handy, when not angry, generally talks very loud in common conversation, ges-

ticulates very much, throws his arms about and evinces excitement, on ordinary occasions and when not angry: and when in argument, his habit is to brandish his fists and talk loud enough to be heard fifty yards. On cross-examination, on being asked whether Handy ever, in an angry and violent manner, shook his fist in witness' face, or in the face of any one else, and swear that if witness or any other person did not do what he requested he would sue him? he answered that Handy had never served him so or any one else to his knowledge. On being asked whether Handy had ever shaken his stick at witness, or at any one else in his presence, and threaten to strike him with it? he answered, never to his knowledge. On being asked whether it was Handy's common manner to shake his fist in the face of persons in an angry and violent manner, and to shake his stick and threaten as above? he answered, not to his knowledge. On being re-examined by defendants and asked whether he ever had any difficulty with Handy that would be likely to draw out from him a threat to sue witness? he replied that he never had, and that he never heard Handy say or do such things as are inquired of by the previous questions; and that even when others were quarreling witness has found Handy forbearing to do such acts and say such things, or use such threats as are inquired of in said questions. The defendants then asked instructions to the jury in substance as follows:

1st. If Tull did not go to plaintiff's house with intent to commit any violence upon his person, and while there committed no such violence either by himself or in co-operation with Handy, the jury must find him not guilty upon the first count.

2nd. If Handy did not go to the plaintiff's house with intent to commit any violence upon the plaintiff's person, and while in the house did not strike plaintiff or intend in any thing he did to commit any violence upon his person or do him any personal harm, the jury are bound to find him not guilty upon the first count.

3rd. If trees had been cut upon the land of Handy's mother by the slaves of the plaintiff, and Handy was her general agent and sincerely believed the trees were so cut by plaintiff's orders,

and in good faith, as her agent, went to the plaintiff's house to effect a compromise relative thereto, and that both defendants entered the house in the daytime without any violence or improper conduct and in the usual manner of persons going on business, and Handy, in good faith and with sincere intent, endeavored to effect said compromise, without intending or offering to commit any violence upon the person of the plaintiff, or to do him any bodily harm, and Tull remained passive and neither committed nor offered to commit any such violence, and before they entered neither of them was ordered not to do so by the plaintiff, or by any other person by his direction, and after they had entered neither of them was so ordered to leave the house, then the jury may infer that they entered by the leave of the plaintiff, and if they do so, they must find for the defendants upon the second count.

4th. This prayer, after leaving to the jury to find as in the preceding, and that Tull, before entry, was not forbidden to enter by the plaintiff, and after entry was not ordered to leave the house by the plaintiff, or his directions, asserts, that they may infer that Tull entered by the leave of the plaintiff, and if if they do so, then *he* is not guilty on the second count, though Handy did assault the plaintiff upon a quarrel arising after the entry.

5th. This leaves to the jury to find and infer the same circumstances as to the entry of Handy, and then asserts, that if they do so find and infer, he is not guilty upon the second count, though he did assault the plaintiff upon a quarrel arising after the entry.

6th. Asserts that Tull was not guilty upon the first count if the jury find he did not in any manner or in any degree abet, encourage or countenance Handy in his assault upon the plaintiff.

7th. That though Handy assaulted the plaintiff, yet if they find Tull did not participate therein, he is not guilty on the first count.

8th. Though Handy committed the assault charged in the first count, yet if the jury find Tull was present, but did not directly or indirectly aid or abet Handy therein, and did not himself commit said assault, he is not guilty on the first count.

9th. This prayer was waived.

Handy and Tull, *vs*. Johnson.

10th. If Tull's accompanying Handy was not by any concert with the latter to assault the plaintiff, and that he entered without any such concert at the time, and formed none such after the entry, and there was no concert either before, at the time, or after the entry, that Handy should assault the plaintiff, and Tull should aid and abet him in the same, and Handy did commit the assault, but Tull did not aid and abet him in any manner or degree, or give any countenance or encouragement to him in said assault, and Tull did not by himself assault the plaintiff, then Tull is not guilty upon the first count.

11th. This prayer is the same as the third, except that it is confined to Handy.

12th. If the jury believe that when Handy shook or brandished his fist at the plaintiff, as stated by the witness Johnson, he intended to offer no violence to the person of the plaintiff, he is not guilty on the first count.

13th. If the jury believe the shaking of the fist by Handy, given in evidence by Johnson, was but the natural and habitual brandishing of his fist and arm spoken of by the witness Bell, and at the time he did not intend to touch or injure the plaintiff, or offer him any personal harm or violence, he is not guilty on the first count.

14th. If the jury believe that when Handy shook and brandished his fist at the plaintiff, as stated by Johnson, he did not intend to assault the plaintiff, they cannot in law find him guilty of the assault charged in the first count, but are bound in law to find him not guilty thereof.

15th. This prayer was waived.

16th. If the jury find that Tull did not go to plaintiff's house with intent to assault him, either by himself or by co-operation with Handy, and did not so assault him, then he is not guilty on the first count.

17th. If the jury believe that Handy, when he went to and entered the house, as stated by Johnson, did not intend to assault the plaintiff or offer any violence to him, either by himself or in cooperation with Tull, and while in the house did not so assault or offer violence to him, and that he went

there for the purpose and in the capacity stated in the third prayer, and honestly and *bona fide* intended and endeavored to effect said compromise without assaulting or offering violence to the plaintiff, and that while he was in the house for the space of time stated by Johnson, he was not requested or ordered to leave the house by plaintiff, or by any one by his directions, then they may infer the leave or license pleaded by Handy, if in their judgment they shall deem it proper to do so.

18th. If Tull and Handy were in the house, as stated by Johnson, and Tull, neither by himself nor in cooperation with Handy, offered any violence to the plaintiff, he is not guilty on the first count.

19th. This was waived.

20th. If the jury find the license pleaded by Tull and Handy respectively to the second count, they must find them not guilty on the issues framed on said count.

21st. Waived.

22nd. If the jury shall find that defendants went to plaintiff's house for the purpose and in the capacity stated in the third prayer, and entered for the same purpose, and continued there for the space stated by Johnson, and while therein their acts were peaceful and directed honestly, and to that sole object, and they were not requested by plaintiff, or by any one by his direction, to leave the house, then the jury may infer and find the licenses by them respectively pleaded, if they, as triers of the facts, shall deem it proper so to find, and if they do so find, they must find for defendants upon the second count.

23rd. This prayer is the same as the preceding, except that it is confined to Tull.

24th. If the jury shall find the license pleaded by Tull, and that he did not commit the assault charged in the first count, either by himself or in cooperation with Handy, they must find for him on the second count.

25th. This is the same as the preceding, except that it applies to Handy.

26th. If the jury find the license pleaded by Tull, and that

he did not, either by himself or in cooperation with Handy, offer any violence to the plaintiff, they must find for him on the second count.

27th. This prayer was waived.

The court rejected all these prayers and the defendants excepted.

*3rd Exception.* After the evidence was closed, and while the counsel for the defendants was arguing the case before the jury, and was reading to them two instructions which the court had granted, marked B and G, as follows:—"*Instruction B.* If the jury shall find the license pleaded by Handy, and that he did not offer any violence to the plaintiff, they must find for him on the second count." "*Instruction G.* If the jury shall find the licenses pleaded by the defendants, and that they did not, nor did either of them, offer any violence to the plaintiff, they must find a verdict of not guilty on the second count;" in order to prove to the jury that there was evidence of license in the cause and before them tending to prove the licenses pleaded by the defendants, he was interrupted by the court, and was told that such use of these instructions was improper. The counsel then prayed the court to instruct the jury, that the instructions B and G were given by the court in favor of the defendants, upon evidence in the cause tending to prove the supposition or hypothesis of facts stated in them, which direction the court refused to give, stating that said instructions were given without deciding, or intending to decide, that there was evidence given by the defendants, or either of them, or otherwise in the cause, tending to prove the licenses pleaded by defendants to the second count. To the refusal to grant the above instruction the defendants excepted.

The verdict and judgment was in favor of the plaintiff, for $200 damages, from which the defendants appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON, MASON and TUCK, J.

*William Tingle* for the appellants.

1st. The quarrel with the son of the plaintiff and Handy, referred to in the first exception, was a *distinct* transaction, and should not have been admitted as evidence against the defendants, or either of them. If it had been an *admission* by the defendant of the trespass, it would have been admissible, but the whole tenor of the evidence negatives this construction. It was not a part of the *res gestæ*. 2 *Greenlf. on Ev.*, secs. 266, 268, 272. 3 *Starkie on Ev.*, 1451, 1452, 1453. 2 *Cowen's Philips on Ev.*, 189. 6 *Bac. Abr.*, 626. The ruling of the court was calculated to enhance the damages and the party is entitled to his exception. 7 *G. & J.*, 335, *Sowerwein vs. Jones.* 10 *Do.*, 7, *Neel vs. Hughes.* The plaintiff cannot in an action for a joint trespass give in evidence the *distinct* act of one of the defendants in aggravation of damages. 16 *Johns.*, 215, *Higby vs. Williams.* 1 *Greenlf. on Ev.*, *sec.* 111. Mere presence without some participation does not make such defendant liable.

2nd. Prayers Nos. 2, 12, 13 and 14, relate to the first count and to Handy, and ought to have been granted, for there clearly was no evidence of a battery, and there could be no assault unless Handy *intended* to offer violence to the plaintiff, and whether he did so intend or not was a question *exclusively* for the jury. 1 *Saund. on Pl. Ev.*, 104. 2 *Greenlf. on Ev.*, secs. 82, 84, 94. 1 *Steph. N. P.*, 208, 209. 1 *Bald. C. C. Rep.*, 600, *Johnson vs. Tompkins, et al.* 2 *Wash. C. C. Rep.*, 437, *United States vs. Hand.* 1 *H. & G.*, 308, *McElderry vs. Flannagan.* *Ibid.*, 470, *Cathell vs. Goodwin.* 1 *G. & J.*, 1, *Pawson vs. Donnell.* The 12th prayer submits to the jury the facts in the very terms of the issue joined, and should for this reason have been granted. 10 *G. & J.*, 346, *Planters Bank vs. Bank of Alexandria.* Prayers Nos. 1, 6, 7, 8, 10, 16 and 18, refer to Tull and the first count, and should have been given. Tull was charged as joint trespasser and confederate with Handy, and if the jury found no confederacy or participation, Tull could not legally be found guilty on the first count. Whether he participated or

not was a question for the jury. *Wharton's Crim. Law*, 27. 2 *Greenlf. on Ev.*, sec. 621. 1 *Archb. N. P.*, 304, 366. The 3rd, 20th and 22nd, refer to Handy and Tull and the second count, and present the proposition, that there was evidence from which the jury might infer the license pleaded by defendants, and that it was within their competency to do so, if they, as triers of the facts, felt themselves bound by their oaths so to find. See 1 *Greenlf. on Ev. sec.* 43. 2 *Do.*, sec. 627. 6 *G. & J.* 157, *State vs. Hammond's Exc'r.* The 5th, 11th, 17th and 25th, are confined to Handy and the second count. The fifth, presents the proposition, that though the jury found the assault by Handy on a quarrel arising after the entry into the house, yet if they found the license in fact pleaded by him, they could not convict him on the state of the pleadings, of the trespass charged in the second count. See 2 *Selw. N. P.*, 501. 6 *Bac. Abr.*, 561. 3 *Starkie on Ev.*, 1470, 1471. The 4th, 23rd, 24th and 26th, are confined to Tull and the second count. In addition to the authorities cited upon the fifth prayer, see 8 *G. & J.*, 248, *Navigation Co. vs. Dandridge.* 10 *G. & J.*, 346, *Planters Bank vs. Bank of Alexandria.*

3rd. The court erred in stating that it had given the instructions B & G, without deciding that there was any evidence to base them upon, and in leaving to the jury to decide whether there was evidence of a license. The act of the court was calculated to mislead the jury. It was impossible for the jury to know from the instructions what the law was in regard to the question of license. The defendants had a right to have explicit instructions, and it was error to give instructions which necessarily implied evidence of license, and then to tell the jury that the court had not decided that there was evidence of license. This was making the instructions contradictory in themselves, and leaving the defendants without a tribunal to decide the question, whether there was evidence of a license? Under such circumstances the defendants cannot be said to have had a trial on the second count. 6 *G. & J.*, 116, *Plater vs. Scott.* 2 *Seargt. & Rawle*, 415,

*Work vs. Maclay.* 1 *Missouri Rep.*, 97, *Coleman vs. Roberts.* 11 *Seargt. & Rawle*, 319, *Selin vs. Snyder.* 2 *Do.*, 44, *Powers vs. McFerran.* *Ibid.*, 49, *Smith vs. Thompson.* *Ibid.*, 70, *Hamilton vs. Menor.* 12 *Verm.*, 60, *Briggs vs. Georgia.* 1 *Ala.*, 423, *Cothran vs. Moore.* 7 *G. & J.*, 335, *Sowerwein vs. Jones.*

*William S. Waters* and *John W. Crisfield* for the appellee.

1st. The testimony objected to in the first exception was admissible, 1st, as admissions of Handy as to what was done in the house, and his intent and object in going there, and 2nd, because it was part of the *res gestæ.* 4 *H. & J.*, 448, *Pratt vs. Ayler.* 7 *Do.*, 67, *Shafer vs. Smith.* It was also admissible as against Tull, because there was evidence to show that they went there for the purpose of making an assault: presence is evidence of combination.

2nd. The prayers may be divided into three classes, Nos. 2, 12, 13 and 14, from the first class, and were all properly rejected. No. 12 ought to have been rejected, because:

1st. The statement of Johnson which the prayer concedes to be true, shows that an assault had been committed. If one within striking distance shakes his fist in the face of another in an angry manner it is *per se* an assault, unless accompanied by declarations purporting a disclaimer to commit an assault. 1 *Mod.*, 3, *Redman vs. Edolfe.* There is no such disclaimer here. The plaintiff actually fainted under the expectation of a blow. See, also, 1 *Russel on Crimes*, 750. 2 *Archb. Crim. Pl.*, 282. 1 *Hawk. Pleas of the Crown*, ch. 62, sec. 1. 1 *Chitty's Pr.*, 37. *Bac. Abr. Title Assault, and Battery, A.* *Com. Dig. Title Battery, C.* 2 *Greenlf. on Ev.*, 63. 4 *Car. & Pay.*, 349. If Johnson's statement is true there is no evidence from which the jury could find a *harmless intent*, and there was therefore no evidence to base the prayer upon. 2 *G. & J.*, 136, *Allegre vs. Insurance Co.*

2nd. But if the intent be still open, the prayer is too broad. It is not necessary that the jury should find that Handy intended to offer violence to the person of the plaintiff, it is

enough that he had a purpose by the exhibition of force to do him an injury, as to put him in fear. *Com. Dig., Battery, C.,* note *r. Russell on Crimes,* 750.   3 *Sme. & Mar.,* 553. *State vs. Benedict,* 11 *Verm.,* 236.   2 *Arch. Crim. Pl.,* 282. 2 *Greenlf. on Ev.,* sec. 83.

   3rd. The evidence was offered to show a battery, as well as an assault, and it was legally admissible for that purpose; and if the jury find a battery was committed, it is no matter what was his intention, except in mitigation of damages, 2 *Greenlf. on Ev.,* sec. 94, and for the purpose of this prayer, the evidence of a battery must be assumed to be true.   *Cole vs. Hebb,* 7 *G. & J.,* 20.

   Prayer No. 2 ought to have been rejected:   1st. For the reasons stated as to No. 12.   Though the jury might find Handy did not *strike* the plaintiff, he might still be guilty of a battery. 2 *Greenlf. on Ev.,* sec. 84.   1 *Dallas,* 111, *Respublica vs. De Longchamps.*   4 *Wash. C. C. Rep.,* 534, *United States vs. Ortega.*

   2nd. Because it tends to mislead the jury.   Unlike No. 12 this prayer does not concede the truth of Johnson's statements; but his being the only evidence of the perpetration of the assault and of what Handy there did, the intent not to do the plaintiff harm would only be found by discrediting his statement, and it was not proper to grant the prayer in the form asked, as it would leave the jury in doubt whether the facts stated, if believed, were not sufficient in law to establish an evil intent, or whether they might disbelieve the witness.

   3rd. Because any unlawful intent in going to the dwelling of the plaintiff, would characterize his conduct and serve to show the feeling and intention which influenced him while there.

   Prayer No. 13, makes the court decide a question of fact which ought to have been left to the jury; and for that reason ought to have been rejected.

   Prayer No. 14, is the same in substance as No. 12, and is disposed of by the same reasons.

The second class includes Nos. 1, 6, 7, 8, 10, 16 and 18, which relate to the assault charged on Tull, and his participation with Handy. They were properly rejected, because—

1st. These prayers are all defective for the one common fault, of referring to the jury the determination of questions of law. It is referred to the jury to say, by the—1st, what is "co-operation" between persons charged as co-trespassers; by the 6th, what is "aiding, encouraging and countenancing" each other; by the 7th, what is "participation;" by the 8th, what is "aiding and abetting," and what is an "assault;" by the 10th, what is "aiding, abetting, giving countenance and encouragement," and what is an assault; by the 16th, what is an "assault," and what "co-operation;" and by the 18th, what is "co-operation." 6 *G. & J.*, 291, *Navigation Co., vs. Hungerford.*

2nd. They withdraw from the consideration of the jury a material and important portion of the testimony. There is evidence of a combination between the appellants to go to the appellee's house and maltreat him ; of their being there, and of an assault by Handy, which, for the purpose of these prayers, must be assumed to be true, all which is withdrawn from the jury, unless they should believe there was a combination to assault and beat him. If they were there in pursuance of a combination for any illegal and harmful purpose, though not the specific purpose stated in the prayer, whatever was done in pursuance of that unlawful combination, is the common act of both. 3 *G. & J.*, 450, *Bosley vs. Chesapeake Ins. Co.* 1 *Bald. C. C. Rep.*, 600. 3 *Monroe*, 217. *Com. Dig., Trespass C. Bac. Abr., Trespass G.* 2 *Arch. Crim. Pl.*, 282.

The third class includes Nos. 3, 4, 5, 11, 17, 20, 22, 23, 25 and 26, all referring to the pleas of license, pleaded to the second count. Many of these prayers are defective in submitting to the jury questions of law; and they were all properly rejected, because there is no evidence whatever to support the licenses pleaded. To sustain the plea of license, the court are required to tell the jury they may infer it if they find,

either—1. That the defendants entered the plaintiff's house to compromise a trespass; or—2. That they were in the house and were not ordered out. As to the first: To compromise a trespass, gives no right of entry; and if it does it is a license in law, and not admissible in evidence under the plea in this case, which is a license in fact. 1 *Chit. Pl.*, 438, 440. 2 *Greenl. on Ev.*, secs. 623, 628. *Six Carpenter's Case*, 8 *Rep.*, 290. *Bagshaw vs. Gaward, Yel.*, 96. *Croke Eliz.*, 876. *Bac. Abr., Trespass B. Com. Dig., Trespass C.*, 2.

2nd. Not forbidden to enter, and not being ordered out, have no tendency to prove the license pleaded. Every entry without authority is a trespass. 2 *Selw. N. P.*, 481. 7 *Com. Dig.*, 508. 6 *Bac. Abr.*, 585. *Mundell vs. Perry*, 2 *G. & J.*, 196, 207. *Evans' Prac.*, 50. License must be shown affirmatively. 2 *Saund. on Pl. & Ev.*, 633.

3rd. The instruction asked in the third exception was properly refused, because there was no evidence to support the plea of license.

Le Grand, C. J., delivered the opinion of this court.

This is an action of trespass for an assault and battery. The plaintiff, to sustain his case, proved by a competent witness, that sometime in December 1850, the appellants came to his dwelling house; that witness being in a neighboring shop, heard a tremendous to-do in the dwelling and angry talk; that Handy, when witness entered the house, was standing over the bed in which the plaintiff, Johnson, was lying sick, and shaking his fist right into the face of the plaintiff and saying to him, if he did not make a compromise for the timber that one Harvey had cut, he would sue him before Saturday night; that after some conversation with witness Handy took a seat, from which he immediately jumped up and went to the bed-side again, shook his fist in plaintiff's face and repeated the same language he had used before. That when they left the house witness followed and asked the defendant, Handy, if he was not ashamed to treat the old man in that way, to which he replied no, d—d if he was, and, having a stick in his hand,

told witness if he would go into the road he would wale him well. The witness further proved that Mr. Handy's voice and manner was very loud and angry all the time after witness went in, and that when Handy went the last time to the plaintiff the latter fainted.

These are the principal facts in the case, and are sufficient to present with distinctness the questions arising under the pleadings and prayers.

The first count in the declaration charges a joint assault and battery against the appellants, and the second a joint trespass in breaking and entering the plaintiff's dwelling.

We hold that the declarations or acts accompanying or immediately following the commission of the act complained of, are competent and proper evidence to explain such act. The rule applicable to the *res gestæ* does not require the circumstance proposed to be given in evidence should have occurred at the precise time when the principal fact happened; if it arose either at the time or so soon thereafter as to constitute a part of the transaction, then it serves to give color and definiteness to it. In this view we hold the court rightfully admitted the testimony of the witness, Johnson, as to the declarations of Handy immediately after he had left the house of the plaintiff.

The 1st, 6th, 7th, 8th and 18th prayers relate to the assault charged on Tull and his participation with Handy, and ask the jury to find for him on the issue formed on the first count. These prayers refer to the jury the following questions: the 1st, what is "co-operation" between parties charged as co-trespassers? the 6th, what is "aiding, encouraging and countenancing?" the 7th, what is "participation?" the 8th, what is "aiding and abetting?" and the 18th, what is "co-operation?" We think the court properly rejected these prayers, because, if for no other reason, they were calculated to mislead the jury by directing their attention exclusively to his conduct while in the house of the plaintiff, and withdrawing their minds entirely from the proof of what had previously taken place tending to show his knowledge of the intention with which Handy went to the house. That intention is disclosed in the conversation between the witness, Dize, and Handy, when the latter said

he was going to the plaintiff's room, and disclosed in very improper language how he designed to treat him. Tull was present at this conversation, and at the request of Handy consented to accompany him.

Prayers Nos. 10 and 16 relate to Tull, and require the jury to decide the legal question of what is an assault, and therefore erroneous.

The 3rd, 20th, 22nd, 5th, 11th, 17th and 25th prayers relate to the second count, and are based upon the assumption that there is evidence of a license on which the defendants had a right to insist that they should have been granted. We cannot think so. We see no proof whatever of a license in fact; and conceding, (for we do not decide the question,) that under the pleas of license in their present form evidence of a license in law might be given, there is none which can authorize this court to reverse the decision below refusing these instructions. If it were admitted that a man may, in a peaceable and quiet manner, lawfully visit the house of another for the purpose of arranging a matter of business, still it certainly cannot be said that the law will license a party to enter a man's house for such a purpose under the circumstances disclosed in the testimony. It appears that a few days before the visit alluded to, in a conversation relative to the timber alleged to have been cut by the agent or hands of the plaintiff upon the premises belonging to the mother of the defendant, Handy said he was going to the plaintiff's room, and spoke of him in the most abusive language and threatened to maltreat him. He asked Tull, the other defendant, to go with him, which he consented to do. When these parties made their intended visit to the plaintiff, his son not knowing they were there, but hearing a "tremendous to-do" in the house and angry talking, went in, and found Handy standing over the bed in which his father, the plaintiff, was lying, and shaking his fist in the face of the plaintiff, and saying to him, if he did not make a compromise for the timber Harvey had cut he would sue him before Saturday night. Handy then turned to the witness and said: "I 've come to the old man to make a compromise for the timber Harvey has cut. Witness said, why do you come to the old man? why

did you not go to Harvey? and Handy said d—n Harvey, he had nothing to do with Harvey. The plaintiff then said, I 've cut nothing on you; I 've never seen the place since I bought it. Handy then sat down, but in a minute or two jumped up and went to the bedside again and shook his fist in the plaintiff's face and repeated the same language he used before." The witness says, "Handy kept going on very rough, and turned to Mr. Tull and said, now Mr. Tull we 'll go." They went out; and just at the door Handy used abusive language to the witness in reply to a question, whether he, Handy, was not ashamed to treat the old man in such a manner? The witness says that all the time he was in the house, Handy's voice and manner were very loud and angry. Upon such proof we do not think the court committed any error in refusing to grant the prayers in relation to license.

We have very carefully examined all the authorities referred to by the counsel in argument, and also many others. It would be an useless task to examine them here in detail, and we therefore content ourselves with stating what we understand to be the meaning of all of them on the subject of an assault.

Where an assault is charged the authorities show that the jury are to decide whether there was an intention to do any violence or injury; but the authorities also establish, that if in a threatening and rude or angry manner a man points a sword, or fork, at another, or shakes his fist in the face of the other, within striking distance, attended with a present ability to strike, although no stroke is given, such act is an assault, notwithstanding the failure to strike. And the jury cannot infer a want of intention to do violence or injury, merely from the failure to strike, in the absence of any declarations or circumstances indicating an absence of such intention, other than the fact that no blow was given. If, however, there are any declarations or circumstances tending to indicate a want of such intention, then the jury are bound to take the declarations or circumstances into consideration, in deciding upon the intention.

If the fact that no blow has been given, when not prevented by any physical impediment or inability to inflict one, can, *per se*, justify the jury in finding there was no intention to do in-

59    v.5

jury, or to commit violence, and consequently no assault was committed, it would be impossible to establish an assault, by proving the pointing of a sword or fork at a man, or the shaking of a fist in his face, within striking distance, with a present ability to strike, no matter how violent, threatening or rude, the manner of the assailant, unless an actual battery should follow.

In the charge of murder malice is an essential ingredient to constitute the offence, and to decide whether there is or not malice, is quite as much the province of the jury, as to decide the question of intention, when an assault is the offence charged; and yet in a trial for murder, when facts are proved, the law implies malice, and the jury are not authorised to disregard that implication until it is rebutted, or removed by proof of circumstances sufficient for that purpose.

When the testimony given in this case is considered, in connection with the principles thus stated, we think the court were right in refusing the prayers numbered 2, 12, 13 and 14. Nos. 1, 12 and 14, are also subject to the objection that they submit a question of law to the jury, that is, What is an assault? and No. 13 is founded upon the testimony of Mr. Bell, which does not authorise it. That witness, on cross-examination, expressly negatived the hypothesis of the prayer. That instruction assumes the statement of Johnson to be true, in regard to the conduct of Handy, when shaking his fist in the plaintiff's face; and if that statement be correct, no rational mind could possibly arrive at the conclusion, from Bell's testimony, that the shaking of the fist by Handy was but the natural and habitual brandishing of his fist and arm.

Although there is a contradiction in the action of the court in regard to the instructions marked B and G, in granting them, and then declaring there was no evidence to support the fact which by them the jury was authorised to find, still, the defendants have no right to complain, if, in point of fact, there was no evidence to sustain the theory of the prayers: and such we are of opinion was the case. On the whole we are of the opinion the judgment ought to be affirmed.

*Judgment affirmed.*