CASE No. 876.

STATE v. BELCHER.

1. Exceptions alleging insufficiency of proof to sustain a verdict of guilty in a criminal case, cannot be considered by this court.
2. The Circuit judge permitted the jury in a capital case to disperse during the trial, without objection made on either side. *Held*, that it was within his discretion to do so.
3. During an arraignment, the name of a juror, who had been temporarily excused, was drawn, but the juror was not called and presented, to which no objection was made by the prisoner until after verdict. *Held*, that there was in this no ground for a new trial.
4. The dying declarations of a wife are admissible against her husband upon his trial for the murder of such wife; and this rule is not affected by Section 415 of the code of procedure.
5. Statements relating to her death—wound made by the deceased eighty-two days before her death, but not in the immediate apprehension of dissolution—are not admissible in evidence against her accused murderer..
6. Statements of the deceased to her attending physician, detailing the cause of the injuries from which death ensued, made some time after the occurrence, are not admissible in evidence against the accused as part of the *res gestæ*, upon his trial for her murder.
7. The rule of *res gestæ* is this: where the inquiry is as to a certain transaction, not only what was done, but also what was said by those present during the transaction, is admissible, for the purpose of explaining its character.*

Before THOMSON, J., Spartanburg, October, 1879.

The case is fully stated in the opinion of the court.

* See review of Bedingfield's case, (14 *Cox's Crim. Cas.* 341,) in the American Law Review for December, 1880, and January and February, 1881.

*Mr. P. D. Hyler,* for appellant.

*Mr. Solicitor Ball,* contra.

May 10th, 1880. The opinion of the court was delivered by

McGOWAN, A. J. William Belcher was indicted for the murder of his wife, Elizabeth. The inditment contained two counts, one for murder by actual violence—beating and kicking— and the other by neglecting to provide necessaries for her when she was sick and helpless, from which neglect she died. The jury found him guilty on the first count, and he appeals to this court for a new trial, upon the following grounds :

1. " Because the Circuit judge erred in allowing the declarations of the deceased to come in evidence against her husband, contrary to Section 415 of the code of procedure.

2. " In allowing the declarations of the deceased to come in evidence against the accused, when the said declarations were made to Dr. W. A. Harrison, on April 21st, and the deceased did not die until July 12th, 1879.

3. " Because Guilford Mason, one of the petit jurors in attendance upon court, and whose name was drawn as one of the jurors to be presented to the prisoner, was not so presented.

4. " Because the members of the jury were separated at one time during the trial.

5. " Because there was no proof as to the time when the accused struck the blows, from the effects of which, as alleged in the indictment, Elizabeth Belcher afterwards died.

6. " Because there was no legal proof that Elizabeth Belcher died from the effects of the said blows.

7. " Because the verdict is contrary to the law and the evidence."

The *fifth, sixth* and *seventh* exceptions charge no error of law, but alleged insufficiency of proof, and might properly have been submitted to the Circuit judge, upon a motion for a new trial, but we are not at liberty to consider them here.

The *fourth exception* charges that the jurors were allowed to separate at one time during the trial. The Circuit judge reports " that there was no request to keep the jurors together,

which was composed of intelligent men, and no feeling being manifested in the case, the jury were allowed to disperse." The strictness of the old practice as to keeping juries together after being charged with a case, has long since been relaxed. This was no error. The judge has discretion to permit the jury to disperse during the trial, even in capital cases. *State* v. *McKee,* 1 *Bail.* 651; *State* v. *Silas Anderson,* 2 *Bail.* 565; *Bishop's Cr. Proc.* 996.

The *third exception* charges that Guilford Mason, one of the petit jurors, whose name was drawn, was not presented to the prisoner. Upon this point, the judge reports that "Guilford Mason had been excused, and when his name was drawn, it may have been pronounced by the clerk, but it was not called as that of a juror who was present, or who was expected to serve, but was put aside and another juror called and sworn. The view of the judge was, that the state selects the panel and presents the jurors to the prisoner, who exercises not the right of *selection,* but of *objection* to the jurors presented. The prisoner freely exercised the right, and in the call of jurors, twelve were presented, to whom he made no objection. The action of the clerk in relation to the juror was not, at the time, excepted to." We find no error here. The absence of the juror was by authority of the court, and it was the same as if he had been detained at home by sickness. If the prisoner had any right to complain, he should have made the objection at the time. *Gen. Stat.* 523, *ch. CXI.,* § 29; *State* v. *Coleman,* 8 *S. C.* 242.

The *first and second exceptions* relate to the admissibility of the statements of the deceased, as proved by Dr. Harrison, and will be considered together. The judge reports that "Dr. W. A. Harrison testified that he visited deceased as a physician, April 21st, 1879; was called in to see her at Dr. Nesbits'; she was in a wretched condition; made an examination; found her suffering pain, &c.; her general appearance indicated *enemia;* her appetite was good; she may have been in that condition for months. *She said her condition was caused by her husband; he threw her down; jumped upon her on her womb, and there remained on her; beat her on her breast and sides. She had been in the condition in which he then saw her, ever since. She thought,*

*at. that time, she would then die.* The doctor then gave his opinion that the effects she exhibited would follow the treatment she said she had received. \* \* \* This physician further said that the deceased was suffering from *peritonitis* (chronic), and had some symptoms of cancer. He mentioned symptoms of both diseases, in detail, and concludes that, in his opinion as a medical man, the woman died from the treatment she received from her husband." The admission of this testimony was objected to, and the objection is renewed here upon several grounds. *First.* It is insisted that this statement of the deceased should not have been received, for the reason that the deceased was the wife of the accused, and if living, would not have been a competent witness against her husband, being excluded by Section 415 of the code. The preamble to the code declares that " the second part relates to civil actions in the courts of this state." The first sub-division of Section 415 provides, generally, that " the husband and wife shall be competent and compellable to give evidence, the same as any other witness, except as hereinafter stated." The second sub-division, manifestly for the purpose of excluding the inference that the provisions of the section might be construed as applying to criminal actions, declares that " nothing herein contained shall render any husband or wife competent or compellable to give evidence for or against the other, in *any criminal action or proceeding,* except," &c. These provisions, taken together, leave the law of evidence in criminal proceedings unchanged, and by the common law, the declarations of the wife, " *in articulo mortis,*" are admissible against the husband on trial for the murder of his wife. 1 *Phil. on Ev.* 251 ; *Roscoe's Cr. Ev.* 118.

The evidence is also objected to on the ground that they were not " dying declarations." Hearsay is evidence of facts with which the witness is not acquainted, but which he merely states from the relation of others, and is inadmissible for the double reason that the party originally stating the facts does not speak under oath, and the party against whom the evidence is offered has no opportunity to cross-examine the party making the statements. The only case in the whole range of the criminal law where evidence is admissible against the accused without an op--

portunity of cross-examination, is that of "*dying declarations*" in cases of homicide, and they are only admissible from the necessity of the case, and when made *in extremity*—when the party is at the point of death, and is conscious of it—when every hope of this world is gone, and every motive to falsehood is silenced by the most powerful considerations to speak the truth.   For the reason that the admission of such statement is exceptional, they ought always to be excluded unless they come within the rule in every respect.   *State* v. *Quick,* 15 *Rich.* 342 ; *State* v. *McEvoy,* 9 *S. C.* 211 ; *Roscoe's Cr. Ev.* 31.   The testimony of Dr. Harrison as to the statements of the deceased to him, does not come within the definition of dying declarations, and was mere hearsay. He did not witness the acts complained of, but only related what she told him had taken place.   She was afflicted with a lingering disease.   Her statement was made April 21st, and she did not die until July 12th, nearly three months after.   It does not appear that the statement was made *in extremity;* she said she thought at the time the violence was inflicted that "she would then die," but she did not say that, at the time she made the statement, she considered herself in the very presence of death— soon to occur.

It was further suggested that the testimony was admissible as part of the *res gestæ.*   The Circuit judge reports that it was admitted on that ground ; but we think that it was equally inadmissible on that ground.   We understand the rule of evidence as to *res gestæ* to be this :   Where the inquiry is as to a certain transaction not only what was done, but also *what was said by those present during the transaction,* is admissible for the purpose of explaining its character.   Thus, as an illustration, it was held in the prosecution of Lord George Gordon for high treason, that the cry of the mob which accompanied the prisoner was admissible as part of the transaction.   *Rex* v. *Lord George Gordon,* 21 *How. St. Tr.* 534.   Declarations which accompany the act characterize it ; but to do so the declarations must be by the persons engaged in the act, contemporaneous with it, if not precisely concurrent in point of time, and proved as other facts by witnesses. To make declarations a part of the *res gestæ,* they must be contemporaneous with the main fact, not, however, precisely con-

current in point of time. If they spring out of the transaction, elucidate it, and are made at a time so near to it as reasonably to preclude the idea of deliberate design, they are then to be regarded as contemporaneous. *State* v. *Mitcham*, 11 *Ga.* 615; *Handy* v. *Johnson*, 5 *Md.* 450; *Roscoe's Cr. Ev.* 24. In the case of Thomson et ux. *v.* Trevanian, which was an action of trespass and assault, Lord Chief Justice Holt allowed what the wife said *immediately on receiving the hurt* to be given in evidence. 1 *Phil. on Ev.* 252; 6 *East* 193. In this case the statement was made, not by the accused, but by the deceased; not at the time, or near.it, but afterwards; how long after does not appear, as she did not state when the violence, of which she complained, was inflicted on her. No declarations of the accused, at the time or afterwards, were proved by Dr. Harrison, who only gave the statement of the deceased as to what had previously occurred. The account given by a person, in answer to questions. of a medical man, is evidence of complaints and symptoms, and of what the person suffers from his bodily state when an inquiry into such particulars is material; but it is not evidence to charge another person as the cause of those sufferings, nor is such an account any evidence of the truth of the statement. 1 *Phil. on Ev.* 233.

The statement of the deceased to Dr. Harrison was not part of the transaction of which she complained, nor evidence of it, and his testimony as to that statement should have been excluded.

The judgment of the Circuit Court is set aside, and a new trial granted.

WILLARD, C. J., and McIVER, A. J., concurred.