MINNIE HALL v. THE INCORPORATED TOWN OF MANSON, IOWA, Appellant.

**Negligence:** MUNICIPAL CORPORATIONS. A town may be charged with negligence to a pedestrian, who in the dark, steps from a sidewalk crossing into an excavation for water mains, although the surface of the crossing is not defective, the excavation being close to the crossing, and there being no guard.

**Contributory Negligence.** A party is not guilty of negligence contributing to her own injury which she sustained by falling into an excavation for water mains near a crossing, because she knew that defendant was putting in water, had seen some of the ditches, knew they were digging such ditches in the neighborhood where she was injured, and could have taken another route, equally direct. Even if she did know of the danger, it was not negligence to attempt the crossing, if she exercised due care in crossing.

*Same.* A pedestrian's knowledge that the town is laying water mains is not sufficient to give notice of an excavation at a particular place near a crossing.

NOTE—The authorities as to the power to compel a plaintiff to submit to a physical examination are found in a note to *McQuigan v. Delaware L. & W. Ry. Company*, 14 L. R. A. 466.

**Evidence:** VIEW OF THE PERSON. Where the condition of plaintiff's foot and ankle is material on the question of permanency of injury, and witnesses for plaintiff have testified that the injured foot is larger than the other, but the leg six inches above the ankle is smaller than the other leg at the same point, and witnesses for defendant have testified that the foot is the same size as the other, and that the leg at the point specified is larger than the other, all the witnesses having just made measurements; it is error to refuse a request to have such parts measured in the presence of the jury, *plaintiff and her counsel not having objected.*

ROBINSON, J., dissenting.

IMPEACHMENT. Where both parties call a witness, plaintiff may discredit testimony which said witness gives for defendant, alone, by showing that he had made contrary statements, out of court.

**Instruction Criticized.** An instruction as to the duty of a municipality in respect to a walk, which says it must be kept "in a safe condition" for public travel, ought to be changed to say that the duty in that respect is to use reasonable and ordinary care; and an excavation for water mains into which plaintiff fell, should not be referred to as "a pitfall."

**Following Charge:** CONFLICTING EVIDENCE: *Court and jury.* Though the jury is, told, that the presence of a light sufficient to apprise a person of ordinary prudence, of the existence of a ditch, will absolve plaintiff from negligence, the jury may find for plaintiff, if the evidence of the presence of the light is in conflict And it might do so, even if there was a light, for the sufficiency of it is, still, for the jury.

*Appeal from Calhoun District Court.*— HON. G. W. PAINE, Judge.

THURSDAY, OCTOBER 29, 1896.

THE plaintiff claims that on the evening of October 20, 1891, in company with another lady, she undertook to pass over Second street, in the town of Manson, Iowa, on the sidewalk crossing the same at a point near the northwest corner of the crossing of Main street and Second street, and that, without negligence on her part, and without knowledge of the existence of an excavation, and of its close proximity to said cross walk, she fell into an excavation, was violently thrown to the bottom of it, and severely injured. She

alleges that she is permanently disabled by reason of said injuries, and asks damages in the sum of four thousand dollars. She alleges that said crossing was dangerous for pedestrians to travel over by reason of a deep excavation and pitfall made in the earth, by defendant, at both sides of said crossing. This excavation was about seven feet deep and extended close up to the edge of the crossing, said crossing being but three feet wide. That on said October 20, 1891, and long prior thereto, the defendant had negligently and carelessly permitted said excavation to exist, and said crossing to remain in said unsafe and dangerous condition, and had failed and neglected to construct or place a barrier or hand-rail to prevent persons passing over said walk from falling into said excavation, and failed to place any warning, light or signal to indicate to or warn persons passing over said crossing of the existence of said excavation. It appears that the town, for the purpose of laying its water mains, had excavated a ditch extending along Second street and across Main street. A water pipe had been laid in the ditch, but the excavation had not been filled prior to the accident. The defendant admitted its incorporation, and that the plaintiff's claim had not been paid, and denied all other allegations in the petition. The cause was tried to a jury, and a verdict returned for the sum of two thousand two hundred and fifty dollars, on which judgment was entered. The defendant appeals.— *Reversed.*

*E. A. Walton* for appellant.

*Botsford, Healy & Healy* for appellee.

KINNE, J.—I. This case has once before been in this court, and is reported in 90 Iowa, 585 (58 N. W. Rep. 881). It is insisted that plaintiff's negligence

contributed to produce the injury of which she complains. It is said that she was possessed of such knowledge touching the excavation, as should have warned her to have taken another way to her destination, and thus have avoided the danger. The evidence does not show that the plaintiff had any knowledge whatever of the existence of the excavation into which she fell. True, it appears that she knew that the town was engaged in putting in water. She had seen some of the ditches, and knew they were digging such ditches in the business part of the town; she had seen one of these ditches on the day of the accident. She could have taken another route, just as direct, to reach the place she was going to. She was not, under such circumstances, negligent in attempting to go over the crossing, having no knowledge of the existence of the excavation. She testifies that it was so dark she could not see the edges of the crossing; that there was no light at or near the excavation; and there is no claim that there were barriers to keep people from falling into it. If her testimony be taken as true, and it is supported, she was in the exercise of due care. Counsel's argument is based upon the claim that when one injured has knowledge of the danger he must use such knowledge so as to avoid injury if possible. Such is no doubt the law, but the facts of this case do not bring it within that rule. If the evidence, to the effect that there was no light at or near the excavation is to be believed, then it is clear that, having no knowledge of the excavation, and no light by means of which she might see her danger, and there being nothing to prevent her stepping into the hole, and she being otherwise in the exercise of due care, she is not chargeable with negligence in not discovering and avoiding the excavation. Her knowledge that the town was laying water mains does not charge her with notice of this particular excavation. Even if she

did know of the danger, she would not be negligent in attempting to go over the crossing, if she exercised due care in so doing. Hers was not a case of knowingly and consciously incurring danger, hence the cases relied upon are not applicable. Counsel also argue that the only duty the town owed to plaintiff was to keep its walks and crossings in a reasonably safe condition. He insists that if the crossing itself was in fact good and sufficient, the town was not liable for an injury received by one when off of said crossing. The following cases are cited: *O'Laughlin v. City of Dubuque,* 42 Iowa, 541; *Alline v. City of Le Mars,* 71 Iowa, 654 (33 N. W. Rep. 160); *Ely v. City of Des Moines,* 86 Iowa, 55 (52 N. W. Rep. 475). These cases, in their facts, are all different from the one at bar. In the *Dubuque Case,* the person was injured while crossing the street, not on a regular crossing, and it is said: "Sidewalks and crosswalks alone are constructed for foot travelers, and he who, without some good and sufficient reason, walks elsewhere and is injured, should not be permitted to complain that he has been injured through the fault and negligence of the city." In *Alline's Case* the injured party was able to see the limits of the walk, and voluntarily, and without necessity therefor, stepped from the walk without knowing she could safely do so. *Ely's Case* was one where the pedestrian on a city street unnecessarily left the street, went into an alley, and fell into an area way. None of these cases are controlling in the one under consideration. In this case, the crossing was being made on the walk provided by the town, and, owing to the darkness, plaintiff inadvertently stepped off of the crossing into an unguarded, and, as some of the evidence shows, unlighted, excavation, which came up to the very edge of the crossing. The jury must have found that plaintiff was not

negligent, and we cannot disturb their finding in that respect.

II.   Counsel for appellant insist that the evidence shows that the defendant was not negligent.   The argument is that as the defendant had a crossing which was, in and of itself, good, and inasmuch as it had a right to excavate for its water mains, and because the excavation formed no part of the crossing walk, therefore it cannot be held liable for an injury received by one who, in the exercise of due care, and unable by reason of the darkness, to discover the limits of the crossing walk, and not knowing of the excavation adjoining said walk, steps into the same. On the same theory, a city might erect a bridge over a river and erect no guard-rails to keep the pedestrians from stepping over its side and falling into the stream below.   The duty imposed upon the town to keep its crossings in a reasonably safe condition for the use for which they were intended, "extends not merely to the surface of the street or walk, but to those things within its control which endanger the safety of those using the street or walk property.   *   *   *   In a statutory sense, a street or sidewalk is defective when it is not in a reasonably safe condition for the use for which it is intended.   It may be due to the presence of something which is a menace to the safety of the users of the way, as well as to insufficient construction or the absence of needed labor or material." *Bliven v. City of Sioux City*, 85 Iowa, 351 (52 N. W. Rep. 246).   The real question is, is the defect complained of in the walk itself, or so near it as to endanger the persons of those properly using it.   *Rowell v. Williams*, 29 Iowa, 210; *Ross v. City of Davenport*, 66 Iowa, 548 (24 N. W. Rep. 47); *Duffy v. City of Dubuque*, 63 Iowa, 172 (18 N. W. Rep. 900); *Pittinger v. Town of Hamilton*, 85 Wis. 356 (55 N. W. Rep. 423).   It was, then, a question for the jury as to whether the defendant was negligent, and as there

was evidence tending to show such negligence, as well as evidence to the contrary, the finding of the jury in that respect should not be disturbed.

III. The court told the jury in the seventh division of the charge, in substance, that if the defendant had caused a light, sufficient to apprise a person of ordinary prudence of the existence of the ditch, to be placed at or near it on the evening of the accident, and before it happened, then the defendant was not guilty of negligence unless it was shown that defendant had caused said light to be removed, or had actual notice or knowledge of said removal, and had sufficient time thereafter to replace the same. It is urged that the verdict is against this instruction and against the evidence. There was much evidence tending to establish the fact that a lamp or lamps were lighted at the excavation, on the evening of the accident, and before it happened. There was evidence also to the contrary. There was much evidence showing that when the accident occurred there was no light at or near the excavation. There was an undoubted conflict touching this matter; and it cannot be said that the finding of the jury was contrary to either the instruction or the evidence. Again, if the evidence had been undisputed that the light was burning when the accident occurred, still it would be a question for the jury, under the instruction, as to whether it was a sufficient light to apprise one of the danger.

IV. Plaintiff called one Lemoin as a witness, and showed by him that he was mayor of the town at the time the accident happened; that the town was then engaged in laying mains for water; that the excavations were made by contractors for the town. Defendant afterwards called the same witness, and he testified in chief that lamps were lighted at the excavation on the night of the accident and before it happened.

On cross-examination he was asked if he did not, on the morning after the accident, and in the presence of plaintiff and Mrs. Safford, at the latter's house, in a conversation there, state "that the town was negligent in not having the lights lit, as they depended on the moon, but after this they would have the lights lit." This was objected to as "incompetent, and laying the ground for impeachment of a witness whom they have used as their own witness, and for the further reason it is on something entirely immaterial." The court said, "I do not understand that a witness who is called by a party cannot be contradicted, and especially I think it is competent to ask this witness this question in view of the testimony he has given." The defendant excepted to the ruling, and the witness answered, "I made no such statement." To another question propounded to this witness, touching a similar conversation with Elinor Hall, the same objection was made, when plaintiff's counsel said, "Plaintiff states that this question is not asked for the purpose of charging any admission upon the defendant because the conversation was had with the mayor of the defendant town, but wholly for the purpose of impeachment of the witness as a witness." The objection was overruled, and an exception taken, and the witness answered, "I have no recollection of making any such statement." Mrs. Safford, Elinor Hall, and the plaintiff were each called by the plaintiff in rebuttal, and asked touching the conversations above referred to. In each case objection was made, and overruled, and the witnesses testified to the conversation. Appellant contends that the impeaching witness contradicted Mr. Lemoin upon a matter immaterial and irrelevant to the issue. In the second place, it is insisted that it was not competent for plaintiff to impeach her own witness. We dismiss the first

contention by saying that, in view of the statement of counsel for plaintiff, this evidence is to be treated as offered for the sole purpose, as to Lemoin, of laying the ground for impeachment, and, as to the other witnesses, of impeaching Lemoin. Was it competent and receivable for that purpose? It is no doubt a general rule that one will not be allowed to impeach or discredit his own witness. 1 Greenleaf, Evidence, section 442; *Hunt v. Hoover*, 34 Iowa, 79; *Hall v. Railway Co.*, 84 Iowa, 316 (51 N. W. Rep. 150); *Gardner v. Connelly*, 75 Iowa, 206 (39 N. W. Rep. 650); *Humble v. Shoemaker*, 70 Iowa, 226 (30 N. W. Rep. 492); *Clapp v. Beck*, 55 Iowa, 272 (7 N. W. Rep. 587). This rule only prohibits impeachment in three ways: *First*, calling witnesses to impeach the general character of the witness; *second*, proof of prior contradictory statements by him; and, *third*, a contradiction of the witness by another where the only effect is to impeach, and not to give any material evidence upon any issue in the case. *Becker v. Koch*, 104 N. Y. 400 (10 N. E. Rep. 701); *Cross v. Cross*, 108 N. Y. 629 (15 N. E. Rep. 333). It is said that "whether it be competent for a party to prove that a witness whom he has called, and whose testimony is unfavorable to his cause, had stated the facts in a different manner, is a question upon which there exists some diversity of opinion." 1 Greenleaf, Evidence, section 444. It will be observed that this is not a case where plaintiff was surprised by the testimony of the witness when examined by her counsel. When the witness was called by plaintiff, nothing was asked him relating to the fact as to whether the excavation was lighted. He was interrogated touching other matters, and then, it would seem, discharged. Afterwards defendant called him as its witness, and asked him whether there were lights at the excavation. On his cross-examination the plaintiff asked the questions heretofore set out.

If, when the witness was called by plaintiff, she had interrogated him regarding the lights, and he had testified that the excavation was lighted, and plaintiff had then sought to show by him that he was mistaken, and, failing so to do, had in rebuttal, put witnesses on the stand to show that he had made contrary statements, we should have a case within the general rule. If the plaintiff had not called Lemoin as a witness, there is no doubt she might have impeached or discredited his evidence regarding the lights at the excavation, which was drawn out when he testified on being called by the defendant. It could not then be claimed that she was impeaching or discrediting her own witness. When he in fact testified to the matter as to which it was sought to impeach him, he was the defendant's witness, called by it. He had before that time been called by plaintiff, and testified as to other matters, and been virtually discharged. He was no more plaintiff's witness as to the matter of lights than if she had never called him to the stand. Plaintiff did not call out the testimony as to which she seeks to impeach Lemoin, but it was elicited by the defendant while Lemoin was its witness. Whatever reason there may be for the rule which prevents one from impeaching or discrediting his own witness, there is none for extending it to a case like this. Courts of high standing have refused to follow the general rule above mentioned, and hold, that by putting a witness on the stand, one is not responsible for his credibility in such a sense that he is absolutely precluded, when surprised by adverse testimony, from showing that the witness had made statements of the facts contrary to his testimony. *Selover v. Bryant,* 54 Minn. 434 (56 N. W. Rep. 58); *Smith v. Briscoe,* 65 Md. 561 (5 Atl. Rep. 334); *Johnson v. Leggett,* 28 Kan. 605; *State v. Sorter* (Kan. Sup.) (34 Pac. Rep. 1039); *Crocker v. Agenbroad,* 122 Ind. 585 (24

N. E. Rep. 169). So much of the doctrine announced in the above cases as permits the witness, under such circumstances, to be impeached or discredited by adverse testimony showing that he had made statements of the facts contrary to his testimony, this court has not approved of. *Hall v. Railway Co.*, 84 Iowa, 316 (51 N. W. Rep. 150); *Smith v. Dawley*, 92 Iowa, 312 (60 N. W. Rep. 625); *Humble v. Shoemaker*, 70 Iowa, 226 (30 N. W. Rep. 492). But see *Thomas v. McDaneld*, 88 Iowa, 380 (55 N. W. Rep. 499); *Smith v. Utesch*, 85 Iowa, 381 (52 N. W. Rep. 343). We held in *Artz v. Railroad Co.*, 44 Iowa, 286, a case where plaintiff had called a witness, who testified to nothing of benefit to either party, and he was then dismissed, and the other party, on cross-examination, drew out evidence not proper to be given on cross-examination, that the witness must be regarded as called by the defendant, therefore, plaintiff might contradict him. So, in the case at bar, we hold, that Lemoin was the witness of the defendant, hence the court properly permitted plaintiff to interrogate him touching his former statements, and, as he denied making them, it properly permitted the plaintiff to impeach him by calling witnesses to testify that statements had been made by him which were contradictory to the facts as testified to by him.

V. The character of plaintiff's injury, and its extent as to permanency, was a material question in the case. Her claim was, that by reason of the fall, "several of the ligaments of the second and third toes" were ruptured, and her ankle severely sprained; that the injury caused severe and acute pain. Several medical men testified for plaintiff that they had just measured her foot at various places, and her leg six inches above the ankle, and found it considerably larger than the other foot. At the point above the ankle, they say the leg was smaller than the

other leg, at the same point. An equal number of doctors, who had just measured the injured foot at the same places, swore, for the defendant, that it was the same size as the other foot, except in the measurement of the leg above the ankle, which was one-sixteenth of an inch larger than the other leg at the same point. It will not admit of a doubt that this array of medical men were not all telling the truth. Either the injured foot and leg were, at the points where measured, the same size as was the other foot and leg at the corresponding points, or it was larger or smaller at some, or all, of said points of measurement. Now, clearly, when such skilled men differ so radically, touching a matter of mere measurement, as to which any number of men lacking in skill, but possessed of ordinary good sense, ought to substantially agree, because relating to a fact capable of exact ascertainment, it was proper to resort to the practical plan of taking these measurements in the presence of the court and jury. Plaintiff being called to the stand by the defendant, she was interrogated as follows by its counsel: "Q. Mrs. Hall, you are the plaintiff in this action? A. Yes, sir. Q. Are you the lady whose feet and legs were measured in the adjoining room here, just before noon to-day? A. Yes, sir. Q. Will you kindly now remove your shoes and stockings and permit the measurement to be made here and now, in the presence of the jury, in the presence of the plaintiff's witness, Dr. Saunders, and the defendant's witness, Dr. Martin? Will you kindly remove them, and allow the measurements to be made now? A. Shall I, Mr. Healy? Mr. T. D. Healy: I have nothing to say. It is for the court to say. Q. Do you refuse to do so, Mrs. Hall? Mr. M. F. Healy: The witness has been examined four times since yesterday, and I think there should be some limit to this matter somewhere, but, at the same time, we do not wish to appear in the position of objecting to the

examination. By the Court: I think we have had enough of that; we are not going to start a measuring school here. Q..Do you refuse to permit the examination; do you object to it? Mr. Hall (from the audience): I object to this now. Mr. O'Connell: Never mind, you are not in this case. Mr. M. F. Healy: Well, I rather think he is in the case, and under the circumstances, I think we ought to object to the examination being made,—a further examination at this time. By the Court: Well, this matter has gone far enough. This proposed examination and measurement will not be allowed. You may put it in the record, Mr. Reporter, that the court, of his own motion, declines to permit it. (To which the defendant excepts, both to the remarks and the ruling of the court)." The remark of the court about not starting a measuring school was not proper. Counsel for appellee says this requirement of the plaintiff that she permit these measurements to be made, was "unseemly." We may be permitted to disagree with counsel, and to say that the request was reasonable, and, under the circumstances, it ought to have been willingly complied with. Here were medical men differing as to the measurement of this plaintiff's foot. If the measurements were as sworn to by the physicians who testified on the part of plaintiff, it was a material fact, indicating an abnormal condition of the injured foot. By making the measurements in the presence of the jury the actual facts would be shown by the best attainable evidence, and the conflict between the learned doctors settled. There is nothing indelicate in the measurement of a foot, or arm, or ankle, in a proper case. It is to be observed that plaintiff offered no objection to these measurements being made. No ground of objection thereto was stated by her counsel, but the court refused to permit it to be done. This court, in *Schroeder*

*v. Railroad Co.*, 47 Iowa, 378, said: "We are often compelled to accept approximate justice as the best that courts can do in the administration of the law; but while the law is satisfied with approximate justice when exact justice cannot be obtained, the courts should recognize no rules which stop at the first when the second is in reach. Those rules, too, which lead nearer the first should be adoped in preference to others which end at points more remote.  *  *  *
To our minds, the proposition is plain that a proper examination by learned and skillful physicians and surgeons would have opened the road by which the cause could have been conducted nearer to exact justice than in any other way. The plaintiff, as it were, had under his own control testimony which would have revealed the truth more clearly than any other that could have been introduced. The cause of truth, the right administration of the law, demand that he should have produced it." It was also held in that case that the power of the court was ample to enforce obedience to an order compelling the party to submit to an examination; so it was held that, as the plaintiff had the right in such a case to exhibit his injured limb to the jury in order to show the extent of his suffering, he may, in a proper case, and under proper circumstances, be required to do the same thing for a like purpose, upon the requirement of the other party. In *Barker v. Town of Perry*, 67 Iowa, 147 (25 N. W. Rep. 101), an action to recover for a personal injury, the court, in speaking of this subject, said: "This kind of evidence is of an important and satisfactory nature. It brings before the jury part of the *res gestæ*, and enables them to determine the nature and character of the injury better than to receive it in a secondary way, as it must be described by witnesses." The following cases show the trend of the authorities touching this question:

*Langworthy v. Green Township*, 95 Mich. 93 (54 N. W.
Rep. 697); *Edwards v. Common Council*, 96 Mich. 625
(55 N. W. Rep. 1003); *City of Lanark v. Dougherty*,
(Ill. Sup.) (38 N. E. Rep. 892); *Carrico v. Railway Co.*
(W. Va.) (19 S. E. Rep. 571); *Railroad Co. v. Finlay-
son*, 16 Neb. 578 (20 N. W. Rep. 860); *State v. Wieners*,
66 Mo. 29; *Railroad Co. v. Wood*, 113 Ind. 548 (14 N.
E. Rep. 572, and 16 N. E. Rep. 197); Wharton, Cr. Ev.
section 312; 1 Best, Ev. (Morgan's Ed.) 307; Abbott,
Tr. Ev. 599; 25 Cent. Law J. 3; 15 Cent. Law J. 2;
*Mulhado v. Railroad Co.*, 30 N. Y. 370; *King v.
State* (Ala) (14 South. Rep. 878); *Railroad Co v. Child-
ress*, 82 Ga. 721 (9 S. E. Rep. 602); *Hatfield v. Rail-
road Co.*, 33 Minn. 130 (22 N. W. Rep. 176). He
would be a bold man who would assert that the
evidence of experts is in all cases valueless. The tes-
timony of medical men in the case at bar touching
these measurements, a matter not resting in opinion
at all, but capable of physical demonstration, is in
direct contradiction, and is well calculated to shake
one's faith in the reliability of experts. In the inter-
est of attaining justice, these measurements should
have been taken before the court and jury. We
do not hold that in all cases, and as a matter of
right, one party may require the injured party to
expose the injured part of his person to the
jury. But when such exposure is in no way indeli-
cate, and seems to be essential in order that the
jury may be properly and correctly advised as to the
material fact which is in dispute, it is not only the
right of the court to order such exposure and exam-
ination or measurement of the injured part on the
request of a party, but its duty so to do. As we have
said, the condition of this foot and ankle was material
as bearing upon the question of the permanency of
the injury, and the court erred in not ordering the
measurements made as requested,

VI. Complaint is made of the second division of the court's charge. It is, in substance, the same as was given on the former trial, and which we held good when the charge was considered as an entirety. While we do not think that the jury could have been misled to defendant's prejudice by the statement of the law therein contained, in view of other parts of the charge, still, as this case, for other reasons, must be reversed, it is proper to say that on a re-trial, the court should avoid the statement found in this division of the charge, to the effect that it was the defendant's duty to keep its walks in a "safe condition" for public travel. Defendant's duty in that respect is to use reasonable and ordinary care. It is not an insurer of the absolute safety of its walks and crossings. The law in this respect was correctly stated in other divisions of the charge.

VII. Complaint is made of the use of the word "pitfall," in the tenth division of the court's charge to the jury. Technically speaking, the word means a trap set to ensnare the unwary. The court used it as describing the hole into which plaintiff fell. While we think the court used the word in a different sense, still, it would be better to use a word, or words, amply expressing the thought intended to be conveyed, and as to which no question of error can arise.

VIII. Error is assigned upon the refusal of the court to give instructions asked by the defendant. So far as they announced correct principles of law, they were embodied in the court's charge. The third instruction asked was properly refused, because it assumed that plaintiff knew the crossing was unsafe, and knew of the ditch, and knew that it was imprudent to attempt to pass over the crossing. There was no evidence justifying such an instruction. It is said, the damages allowed are excessive. In view of a re-trial,

we need not discuss that question. Many other questions are discussed by counsel. We have examined the points made, and discover no error, except as heretofore pointed out. Because of the refusal of the court to permit the measurements asked for, the judgment is REVERSED.

ROBINSON, J., (dissenting).—I cannot assent to the fifth division of the foregoing opinion. None of the authorities cited in its support appear to me to require the conclusion reached. The larger number of them merely hold that in a case involving injuries to a person, it is proper to exhibit the injuries to the jury, and do not treat of compulsory, but of voluntary, examinations. Of the cases cited, *King v. State* (Ala.) (14 South. Rep. 878), is the only one which involved the compulsory examination of the alleged injuries of a person in the presence of the jury. In that case a witness testified that the defendant shot him on the arm, and the defendant, in cross-examination, offered to exhibit the arm to the jury. The state objected, and the objection was sustained. It was held on appeal that the court erred in sustaining the objection, and in that connection the fact was noticed that no question was raised by the witness, court, or counsel as to the delicacy of the proposed exhibition; that the arm could have been shown to the jury without offense to the modesty, or delicacy, of feeling of the witness, of the court, or of the persons present in the court room; and that in view of the conflicting testimony as to the direction from which the shot was fired, it might have afforded the jury valuable aid in determining vital questions. In *Hatfield v. Railroad Co.*, 33 Minn. 130 (22 N. W. Rep. 176), also cited in the majority opinion, the plaintiff sought to recover for personal injuries, which she testified caused her to limp in walking. The defendant requested the court

to direct her to walk across the court room in the presence of the jury, but the court declined to do so. That ruling was sustained on appeal. The supreme court held that a trial court has the power, in a proper case and under proper circumstances, to direct a person to do in the presence of the jury a physical act that will illustrate, or show, the character of the injuries of which he complains, but that the court "very properly refused to direct the plaintiff to exhibit herself to the jury and bystanders by walking across the room." It was said such an act would only have enabled the jury to determine a fact which was shown by uncontradicted evidence. Whether a person may be compelled, against his will, to submit to an examination of personal injuries, is a matter in regard to which the authorities are in conflict. In *Railway Co. v. Botsford*, 141 U.S. 250 (11 Sup. Ct. Rep. 1000), the power of the trial court to order the plaintiff, who was seeking to recover for personal injuries, to submit to an examination by a surgeon was denied. See, also, *McQuigan v. Railroad Co.* (N. Y. App.) (29 N. E. Rep. 235); Id., 14 Lawy. Rep. Ann. 466, and note. The right to order such an examination was affirmed by this court in *Schroeder v. Railway Co.*, 47 Iowa, 375, but that case did not involve the right to compel a public examination before the jury. The authorities which sustain the right of trial courts to order the physical examination of persons whose condition is the subject of controversy, hold that the courts have a large discretion to grant or refuse such orders, and that their action will not be disturbed unless the discretion has been abused. Thus, it was said in *Hatfield v. Railroad Co., supra*, in regard to the order therein sought, that "it is evident, from the very nature of things, that the propriety of such an order must usually rest largely in the discretion of the trial court, and it would only be in case of a plain abuse of such discretion

that we would interfere." In *Railroad Co. v. Childress* (Ga.) (9 S. E. Rep. 602), it was held that trial courts had the power to order the physical examination of persons alleged to have been injured, "and that in each case it was to be exercised, or not, according to the sound discretion of the trial judge." In *Shepard v. Railway Co.*, 85 Mo. 634, the court said of orders for such examinations, that it was inclined to hold that they might be made, "but not that a party has an absolute right to have such a personal examination- It is a matter in which the court has a discre, tion which will not be interfered with unless manifestly abused." See, also, *Stuart v. Havens* (Neb.) (22 N. W. Rep. 419); *Railroad Co. v. Thul*, 29 Kan. 475. Before a court will be authorized to order the physical examination of a witness, the necessity of the examination, to a just determination of the cause, must be shown. *Railway Co. v. Finlayson* (Neb.) (20 N. W. Rep. 865); *Railroad Co. v. Norfleet*, 78 Tex. 324 (14 S. W. Rep. 703); *Railway Co. v. Underwood*, 64 Tex. 466. When a physical examination is ordered, care should be taken to protect the person examined, from indignity, and no indelicate exposure of the person, not absolutely necessary, should be required. Especial care will be taken to avoid wounding the feelings of modest and sensitive females. *Railroad Co. v. Childress, supra; Shepard v. Railway Co., supra.* Such an examination will not be ordered in the presence of the jury, where it would require an indecent exposure of the person. 1 Thompson, Trials, section 861; 25 Cen. Law J. 7. And an unnecessary exposure of that kind should not be permitted by the court, even though no objection be made. *Brown v. Swineford*, 44 Wis. 285. Very few of the cases which involve compulsory physical examination refer to those which were, or were designed to be, made in open court in the presence of the jury. As a

rule, they relate to private examinations only. All authorities which treat of the subject, recognize a sacredness of the person, a right to be free from physical restraint or compulsion, which will be interfered with only for reasons of controlling importance. Until the contrary is shown, the rulings of the trial court must be regarded as correct, and we are required to indulge in all reasonable presumptions that they are correct. When Mrs. Hall was asked to remove her shoes and stockings and submit to measurements in the presence of the jury, the testimony which had been introduced showed that she had submitted to physical examinations conducted by medical experts on behalf of the defendant two years or more before the trial, and again on the day of the trial, and that but two of the four physicians who had examined her for the defendant at the time of the trial had been called as witnesses. There was no suggestion that she had refused to submit to any private examination which the defendant desired to make. Dr. Speaker had testified for her that he was present when Dr. Evans measured her feet on the day of the trial, that the left or injured foot was half an inch larger at the ankle and between that and the toes than the other foot, and that he thought the left leg six inches above the ankle was three-eighths of an inch larger than the right leg at the same distance above the ankle. Dr. Evans had testified that the left foot was half an inch larger than the right at the middle joint above the ball of the foot and at the ankle, and that the left leg six inches above the ankle was three-eighths of an inch smaller than the right. Dr. Saunders had testified that his measurement, on the day of the trial, showed that the left leg of the plaintiff six inches above the ankle was smaller than the right, but he did not state what the difference

was. Dr. Eslick had answered a hypothetical question, but did not testify to any personal knowledge of the plaintiff's feet. On the part of the defendant, Dr. Hews had testified that measurements of the plaintiff's feet had been made that day, in the presence of himself, two physicians who had testified for the plaintiff, three other physicians who were witnesses for the defendant, and attorneys for the parties; that there was a difference between the feet and legs of the plaintiff at one point of measurement, but that he had forgotten which one, of one-sixteenth of an inch, and he did not state which foot or leg was the larger. Dr. Martin had testified that he saw the measurements described by Dr. Hews, and that they showed the feet of the plaintiff to be of the same size, and that the left leg, six inches above the ankle, was one-sixteenth of an inch larger than the right. This was the showing made with respect to the measurements when Mrs. Hall was requested to make the exhibition of herself, and submit to the measurements in question. Dr. Mullarky and Dr. Young, who, it appeared, had assisted in making the measurements, had not testified, and the defendant gave no reason for not having called them. As they were afterwards examined for the defendant, we may presume that they were present in court, and that the court knew that the defendant had not exhausted its testimony in regard to the measurements. The question which they were designed to settle was not controlling, and was one of many involved in the case. Much testimony had been given in regard to the anatomy of the foot and ankle, the rupture of tendons and ligaments, electrical experiments, to ascertain the nature and extent of the injuries in question, besides the direct testimony of the plaintiff, and others, in regard to her injuries and sufferings. Mrs. Hall is described as "rather fleshy," and a difference of half an inch in

measuring the circumference of her feet and limbs might easily be made by different persons, and observers be unable to detect any errors in the measurements. It is not at all probable, that measurements made in the presence of the jury would have aided it materially, to reach a verdict. It is by no means certain, that such measurements would not have confused, rather than helped, the deliberations of the jury. The request of the defendant was, that Mrs. Hall remove her shoes and stockings in the presence of the jury, and, we may presume, before a large audience of bystanders, in a crowded court room, for the single purpose of having her feet and legs measured in such a manner that the jury might see it done. In my opinion, it was not only within the power, but the duty of the district court, under the circumstances shown to exist, to refuse to allow the desired experiments to be made. As it appears to me, it certainly would have been indelicate, if not positively indecent, and would have been shocking and repulsive to any modest and sensitive woman. It was not shown to be necessary. The defendant had been afforded ample opportunity to make accurate measurements, and if its witnesses failed to make and remember them, the plaintiff should not suffer for their negligence. Although she and her attorneys did not offer as much resistance to the request of the defendant as they might well have made, yet it is evident that they were unwilling to make the exhibition desired, and that they did not wish to prejudice their case by appearing to withhold evidence which it was within their power to give. The court had a knowledge of the plaintiff, and of the conditions under which the experiment, if permitted, would have been made, which we cannot have. The defendant had not introduced all the evidence at its command. In my opinion, no abuse of the discretion with which the district

court was clothed is shown. The opinion of the majority, while disclaiming the adoption of a rule applicable in all such cases, does, in effect, hold that the district court had no discretion, and that in this and all similar cases the defendant may, as a matter of right, require a woman whose injuries are in question, to partially disrobe herself in the presence of the court, jury, members of the bar, and possibly a court room full of bystanders, and raise her garments sufficiently high to permit each of the twelve jurors to see her legs measured six inches above the ankles, and that this may be done, even though other evidence is at the command of the defendant, and at hand, which may show that the exhibition is wholly unnecessary. I cannot assent to such a holding. It may be further said that, after the court refused the request of the defendant, the latter called Dr. Saunders, who had testified for the plaintiff, and showed by him that he was present when the measurements were made for the defendant, and saw nothing unfair in them, and nothing to show that they were not made at the places measured for the plaintiff. Dr. Mullarky then testified, and corroborated fully the testimony given by Dr. Martin in regard to the measurements. Dr. Young testified that the feet measured the same, and that he could not see any difference between them. The plaintiff did not offer any evidence in rebuttal on this branch of the case. It thus appears that the preponderance of the evidence on that issue was on the side of the defendant. I believe it has had a fair trial, and that it has no just reason to complain of the judgment of the district court.

GRANGER and DEEMER, JJ. We place our concurrence in the conclusion of the majority opinion on the fact of the interference by the court, without objection by the witness or counsel. It appears in the record

that the court, of its own motion, declined to permit the examination. It seems to us, the record limits our inquiry to that state of facts. There was nothing in the examination not entirely proper to take place in open court, if the witness did not object.