280        STATE vs. B. & O. R. R. Co.

Syllabus.                                      [117


STATE OF MARYLAND, use of Emma A. Welch,
Mother and Next Friend of James Henry
Welch, Deceased, vs. BALTIMORE AND
OHIO RAILROAD COMPANY,
a Body Corporate.

*Witness: impeachment of—; testimony different from previous
statement. Res gestae: discretion of Court. Evidence:
shoe worn at time of accident. Negligence; rail-
roads; trespassers on tracks; backing engine.*

A party calling a witness can not be permitted to impeach his
general reputation for truth and veracity.        p. 283

If a witness had made to the party who calls him, or to the
attorney of such party, a statement totally variant from his
sworn testimony, and on the faith of which statement he was
called, he may be asked if he made such a statement, and if
he denies it the proof of such previous statement may be
given, not for the purpose of impeaching the witness's gen-
eral character, but for the protection of the party calling
him.                                              p. 283

It is in the discretion of the judge before whom the case is
tried to apply the rule.                          p. 284

Where it is desired to offer in evidence a shoe which was worn
by a party killed in a railroad accident, it must first be
shown that the shoe was in the same condition as it was
when the accident occurred.                       p. 284

Where it is decided to prove by expert witnesses what was
the condition of the tracks and switches, etc., where an acci-
dent occurred, and how far a person can see looking from
the windows of a backing engine with a tender in front of
it, the evidence must be confined to the conditions existing
at the time of the accident.                      p. 285

For declarations and statements to form part of the *res gestae*
they must not be the result of premeditation or design, but
upon the "immediate spur" of the transaction and need not
necessarily be spoken at the identical point of time when the

principal fact happened, yet must have been made so soon thereafter as fairly to be a part of the transaction and of the elucidating and explaining it.                        p. 285

After lying some minutes on the tracks where he had been injured by a backing engine, and talking with a witness, a boy was carried some distance to the station on the engine. *Held,* that his statement at the station. as to the cause of injury was not admissible as part of the *res gestæ.*        p. 286

A railroad company is not liable in damages for injuries received by a trespasser upon its tracks who was injured by a backing engine unless the employees in charge of the engine were negligent in stopping the engine when they became aware of his presence on the tracks in a position of peril.        p. 286

Where there is evidence that the engineer of the railroad company might have heard the cries of the injured party in time to have saved him, it is a question for the jury to determine whether or not the engineer was not aware of his presence, although it appears from the testimony in the case that the engineer was not in a position actually to see the injured party.                        p. 288

Where it appears that the failure of the appellant to transmit the record to the Court of Appeals in time was due partly to the fact of the absence of the appellee's counsel from the city and where it appears that upon the return of the latter, the bills of exception were completed with reasonable dispatch and presented to the trial judge for his signature by both the counsel for the plaintiff and defendant, it was held that under the circumstances the appellant was not guilty of such want of diligence as would authorize the dismissal of the appeal under section 4 of Article 5 of the Code.        p. 289

*Decided January 11th, 1912.*

Appeal from the Superior Court of Baltimore City (ELLIOTT, J.).

The cause was argued before BOYD, C. J., PEARCE, BURKE, THOMAS, PATTISON and STOCKBRIDGE, JJ.

*Linwood L. Clark,* for the appellant.

*Duncan K. Brent* (with whom was *Allen S. Bowie* on the brief), for the appellee.

BURKE, J., delivered the opinion of the Court.

On Sunday, August 15th, 1909, James H. Welch, a boy about fourteen years of age and the son of the equitable plaintiff, was run over and fatally injured by the tender of a locomotive of the defendant company which was backing along a switch on Wells Street at or near the foot of Byrd Street in the City of Baltimore.

The suit was brought in the name of the State for the use of the mother, Emma A. Welch, a widow, to recover damages for her son's death, which was alleged to have been caused by the negligence of the defendant. At the conclusion of the plaintiff's evidence, the Court granted a prayer by which the jury were instructed that by the undisputed evidence in the case the deceased by his own negligence had directly contributed to the happening of the accident and that their verdict should be for the defendant. In obedience to this instruction the jury rendered a verdict for the defendant, and from the judgment entered thereon the plaintiff has appealed. This is the second appeal in this case, the first being reported in 114 Md. 536. In the opinion of JUDGE SCHMUCKER in that case, the locality where the accident happened and how it happened as described by the witnesses are fully considered, and the rule of law proper to be applied to the case is clearly stated. What was said in that opinion relieves us from a full discussion of many of the questions presented on this appeal. The record presents twelve exceptions taken to the rulings of the Court on questions of evidence, and these will now be considered.

The first, second, third and fourth exceptions present substantially the same question. They arose in this way: The plaintiff offered to impeach the credibility of the witness Zepp, whom he had placed upon the stand, and for this

STATE vs. B. & O. R. R. Co.       283

Md.]                        Opinion of the Court.

purpose read from the record in the former trial a number of questions and answers, and asked the witness if he had not so testified at that trial. He further offered to prove by John C. Davis, Jr., a stenographer who took the testimony at the first trial, that Zepp had testified to certain facts embraced in a question propounded to Davis.

There was no error in refusing to admit this character of evidence. In no case can a party calling a witness be permitted to impeach his general reputation for truth and veracity; but there are special circumstances under which he may be permitted to impeach or discredit him by showing that he had previously stated the facts in a different manner. The conditions under which this is allowable are thus stated in *Smith v. Briscoe*, 65 Md. 561: "If the witness has made to the party who calls him, or to the attorney of such party, a statement totally variant from his sworn testimony, and on the faith of such testimony he has been called, he may be asked if he made such a statement, and if he denies it, we see no objection to the proof of such statement, not for the purpose of impeaching the general character of the witness, but for the protection of the party calling him. If a plaintiff calls a witness, relying upon statements made to him or his attorney, and when on the stand he proves the defendant's case, we think that the principles of justice require that the plaintiff should be able to show why he called him. There are objections to either course, but the more objectionable one would be to hold the party bound by the evidence of such treacherous witness. We restrict such declarations to those made to the party calling him or to his attorney, and made in reference to the case pending, and do not extend them to statements made to others. It is upon the statements so made to the party to the suit or his attorney that the witness is called. If the witness under such circumstances make a false statement, he cannot complain that his falsehood is exposed. But is not every statement that may be

made even to the party litigant or his attorney, that should be allowed to be contradicted by the party calling the witness. It should be left to the discretion of the judge before whom the case is tried below to allow it to be done. The Court should be satisfied that the party has been taken by surprise, and that the evidence is contrary to what he had just cause to expect from the witness based upon his statements, and that such statements were about material facts in the case. It is not every light or trivial circumstance that would justify it."

A comparison of the testimony of this witness with those portions of his evidence given at the former trial and embraced in the questions propounded to him shows that there was no such substantial variance as to bring the case within the exception stated in *Smith* v. *Briscoe, Supra.*

The same is true of the eighth and ninth exceptions, where a like attempt was made to discredit the witness Clark.

We find no error in the rulings embraced in the fifth and sixth exceptions. In the fifth exception it is stated that the plaintiff proposed to introduce a shoe which the boy wore at the time he was injured. The shoe had been given to the undertaker, Mr. Slowman, by the keeper of the dead house at the University of Maryland. Before this shoe could have been admitted it should have been shown that it was in the same condition as it was when the boy was taken to the hospital. The witness Ackerman testified that after the boy had been run over he was crying and said he knew he was dying. He was asked how often did he repeat that expression. The Court upon objection refused to permit the question to be answered. Evidently, no injury resulted to the plaintiff from this ruling.

Nor do we find any error in the tenth, eleventh and twelfth exceptions. The plaintiff proposed to prove by Jefferson D. Sweitzer and John T. A. Stroup, two experienced engineers, both of whom had been in the employ of the defendant company as engineers and who were famil-

iar with the tracks and cross over switch where the accident occurred, that a person looking out the side window of a backing engine with a tender in front could see the switch. If the questions asked these witnesses had embraced the conditions existing at the time of the accident as described by the engineer Zepp, the evidence would have been proper; but as it was not confined to those conditions it would have been misleading, and it was properly refused.

The evidence shows that the injured boy was taken from the place of the accident on one of the engines of the defendant to Camden Station. At or about twenty minutes of six o'clock that afternoon he was taken by Robert L. Morgan to the Maryland General Hospital. He was then conscious, but died about two o'clock the following morning. The plaintiff then asked Mr. Morgan the following question: "Will you please state to the Court and jury what he gave you as the cause of the accident?" The Court refused to allow this question to be answered, and this ruling constitutes the seventh bill of exceptions.

It is contended by the plaintiff that this statement was a part of the *res gestae,* and should have been admitted; but under the settled law of this State it was made at a time too far removed from the place of the injury to constitute a part of the *res gestae.*

In *Baltimore City* v. *Lobe,* 90 Md. 310, the Court referred to a number of cases on this subject and said: "All agree that to make the declaration a part of the *res gestae* it must be so connected with the transaction as to be reasonably a part of it; it must not be the result of premeditation or design, but the "immediate spur" of the transaction; and though it need not appear that it was spoken at the identical point of time when the principal fact happened, yet it must have been made so soon thereafter to fairly be a part of the transaction, and therefore elucidating and explaining it. But if the declaration was made after the main occurrence had ceased, and there is no necessary connection between it and the principal event, it is then nothing more

than a narrative of a past occurrence, and is not admissible as a part of the *res gestae.*" The statement sought to be given in evidence was made at Camden Station sometime after the accident, and some distance from the place of its occurrence, and the Court committed no error in refusing to admit it.

The important question presented by this record is whether, under the principles announced in the former case, the equitable plaintiff had offered any legally sufficient evidence to take the case to the jury. The judgment in the former case was reversed and a new trial awarded for error in the rulings upon evidence and in granting the plaintiff's first and the defendant's fourth prayer. The lower Court in the trial of that case had admitted certain testimony upon the theory that it tended to show that the deceased was upon the tracks of the defendant company "by virtue of some implied license or permission from it." This testimony was found to be inadmissible, and since the plaintiff's first prayer which declared the defendant's duty to the deceased was based upon that testimony, the prayer was announced bad. The defendant's fourth prayer was held bad because it asserted "that the duty of the defendant's agents to exercise care to protect the plaintiff's deceased would begin only when they *saw* him in a situation of peril instead of when they became *aware* of his peril."

In view of what was said in the first appeal and of the evidence contained in this record, the deceased must be treated as a trespasser upon the defendant's tracks, and "its employees in charge of the backing engine owed him no duty until they became aware of his presence on the tracks in a position of peril."

At the close of all of the testimony at the first trial the defendant sought to take the case from the jury, and one of the prayers offered was identical in form with the granted prayer in this case. These prayers were refused, and the rulings were affirmed by this Court.

At the first trial the plaintiff produced Charles A. Trump, who testified that he was an eye witness of the accident and gave a detailed description of how it occurred. At the trial of this case the testimony of Trump, as given in the first trial, was read from the record in that case to the jury by consent of counsel.

Commenting upon Trump's testimony, JUDGE SCHMUCKER said: "The plaintiff's witness Trump, whose testimony for the purpose of the present inquiry must be taken as true, testified that the boy's foot was caught between the switch points and the rail when the engine was a block and a half away from him, and that he screamed and yelled and tried in vain to pull his foot loose, but he was held fast until the tender ran over him. As the engine and tender approacheu him they moved at the rate of but two miles an hour. Both the engineer and the brakeman who were on the engine testified that they were looking back in a direction in which they were moving all the time, and did not see the boy toward whom they were going until after the engine had passed over him. * * * If Trump's testimony that the boy was screaming and yelling from the time his foot was caught in the switch was true, those in charge of the engine might have been informed of his peril by hearing his cries of distress." Trump's testimony was held in the former case legally sufficient to have taken the case to the jury.

It follows that there was error in withdrawing this case from the jury, unless there be found in the present record some fact, or circumstance which makes the ruling on the former appeal on this question inapplicable. This fact, it is argued, is found in the testimony of William H. Zepp, the engineer in charge of the locomotive and tender which ran over the boy. He testified for the defendant in the former case; but on the re-trial he was called by the plaintiff. We have been unable to discover anything in the testimony of this witness that would make the ruling in the former case inapplicable. His testimony in which he refers to switches and targets is somewhat obscure and confusing;

but assuming that he meant to testify and that he did in fact testify that he did not see and could not see the switch in which the boy was caught, because his vision was cut off by the tender, that fact is not of itself sufficient to take the case out of the ruling of the prior case.

The argument in the former case was this: No duty was owed by the defendant to the deceased until its employees in charge of the locomotive and tender *saw* him in a position of peril, and since neither the engineer nor the other employees on the locomotive and tender saw the boy in a position of peril, therefore there could be no rec jvery. The answer to this argument was, first, the duty to use care arose from the moment the employees of the defendant became *aware* that the boy was in a position of peril on the track and was not limited to their *actually seeing* him in that position; secondly, they might have become *aware* of his perilous position by hearing his cries of distress.

The contention now made is that there can be no recovery, because it was physically impossible for the *engineer* by reason of the facts stated in his testimony to have *seen the switch.*

This is fully answered by what was said in the former case. Besides, nowhere in the testimony of the engineer does he say that he did not see the boy on the switch, or that he did not hear his screams of distress. We are, therefore, of opinion that the Court committed an error in granting the defendant's first prayer by which the jury were instructed to find for the defendant, and for this error the judgment must be reversed.

The appellee has moved to dismiss the appeal upon the ground that the transcript of the record in the case was not transmitted to this Court within three months from the time the appeal was taken as required by Article 5, section 40 of the Code. The affidavits show that the failure to transmit the record in time was not wholly due to the fault, or want of diligence of the appellant, but was partly due to the absence of appellee's counsel from the city. Upon his

return to the city from his summer vacation, the bills of exception were completed with reasonable dispatch, and were presented to the judge for his signature by both the counsel for the plaintiff and the defendant. We do not find that the counsel for the appellant under the circumstances was guilty of such want of diligence as would authorize us to dismiss the appeal.

> *Judgment reversed, and new trial awarded, with costs to the appellant.*