WILLIAM P. SMITH *vs.* ALEXANDER M. BRISCOE.

*Evidence—Treacherous witness—Practice.*

B. was a trustee to sell certain property, pay $1000 to a mortgagee, $800 to himself, and $600 of the residue, if any, to S., to be applied in payment of a note for $600, which B. had indorsed for S. Before the maturity of the note, B. offered the property for sale without obtaining a bid for it. It was afterwards sold by the mortgagee for a sum which was nearly all taken in payment of the mortgage debt and expenses. The note for $600 was not paid at maturity, and had to be paid by B., who thereupon brought suit upon it against S. The defence set up by S. was that B. had been guilty of negligence in the sale of the property, and owing to his negligent management the property failed to bring enough to pay the note. HELD:

That the defendant after offering the record to prove that the property sold for a certain sum, and that the sale had been ratified by a Court of competent jurisdiction, was precluded from showing by parol that it was worth more, no fraud in the sale being charged.

If a witness has made to the party who calls him, or to the attorney of such party, a statement totally variant from his sworn testimony, and on the faith of which statement he has been called, he may be asked if he made such a statement; and if he denies it, the proof of such statement is admissible, not for the purpose of impeaching the general character of the witness, but for the protection of the party calling him.

If the plaintiff calls a witness relying upon statements made to him or his attorney, and when on the stand he proves the defendant's case, the principles of justice require that the plaintiff should be able to show why he called him.

There are objections to either course, but the more objectionable would be to hold the party bound by the evidence of such treacherous witness.

Such declarations must be restricted to those made to the party calling him, or to his attorney, and made in reference to the case pending, and must not be extended to statements made to others.

36     v. 65.

Smith *vs.* Briscoe.

But it is not every statement that may be made even to the party litigant or his attorney that should be allowed to be contradicted by the party calling the witness. It should be left to the discretion of the Court before whom the case is tried, and it should be satisfied that the party has been taken by surprise, and that the evidence is contrary to what he had just cause to expect from the witness, based on his statements, and that such statements were made about material facts in the case.

APPEAL from the Baltimore City Court.

The case is stated in the opinion of the Court.

The *First* and *Second Exceptions* are sufficiently stated in the opinion of the Court.

*Third Exception.*—The defendant, further to maintain the issues on his part, proved by John H. D. Boone, that he was the owner of said property, and offered the same property to defendant, if he would take care of the note sued on, out of said property, and that Smith declined said offer; that said Pratt street house rented for $25 a month, and the two houses on Dover street each at $9 per month; that afterwards he met plaintiff, he could not recollect when, but he thought some days, or a day or two after his interview with defendant, and told plaintiff that he had said note in bank and that he had offered said property to defendant if defendant would take care of the note, and that defendant had declined the offer and desired plaintiff to take the property and look out for the note; that he then owed plaintiff $800, and plaintiff agreed that if he was paid that sum he would accept the conveyance ; that he and plaintiff and defendant all thought at the time that said property would suffice to pay the mortgage of $1000, the debt of $800 to Briscoe, the note of $600, and he, Boone, expected a surplus to be paid to him out of the proceeds of the property; that he accordingly conveyed the property to the plaintiff for the purpose of dis-

posing of it, paying the mortgage and other debts on it, paying himself $800, and then paying the said note and the balance to him, Boone, and that the said $600, due on said note sued on, formed no part of and was not included in the consideration of $800 expressed in the deed from him to plaintiff; and therefore the defendant offered to put the following question to the witness:

"Whether about a couple of weeks previously to the trial, he did not tell the defendant and Mr. Baldwin, that he met defendant and offered him the property mentioned in the deed to Briscoe to take care of the note; that when Smith declined it, he went down the street, and a very short time afterwards met Briscoe, and offered him the property on identically the same terms that he had offered it to Smith; that Briscoe accepted the offer, and that the $600 due on the note endorsed by Smith, formed part of the consideration of $800 expressed in the deed?"

To this question the plaintiff objected, and the Court (BROWN, C. J.) sustained the objection. The defendant excepted.

*Fourth Exception.*—The plaintiff offered the following prayer:

If the jury believe that the plaintiff was not negligent in the management or disposition of the property conveyed to him by Boone, and that the proceeds realized from the sale of said property were not sufficient to pay the $1000 mortgage, and $800 to the plaintiff, that then their verdict must be for the plaintiff for the full amount of the note sued on in this case, with interest and costs, less the $205 already paid by defendant.

The defendant offered the five prayers following:

1. That there is no evidence in the cause that any consideration passed between plaintiff and defendant for the endorsement of the note sued on in this cause by the plaintiff, and there is no evidence of a request from defendant to plaintiff to endorse said note, and therefore the plaintiff cannot recover in this suit upon said note.

2. If the jury find the agreement in writing between plaintiff and defendant, offered in evidence in this cause, and that the note sued on is the note. mentioned in said agreement, and that neither at the maturity of said note nor afterwards, before the commencement of this suit, did plaintiff apply to defendant to assist him, plaintiff, to raise said note, and that before and at the time of, and subsequently to the date of the maturity of said note, plaintiff repudiated or did not recognize the said agreement, or some or any part thereof, and did not hold the property mentioned in said agreement liable to the terms thereof, and did hold and claim that the said property was his absolutely to · sell or not as he saw fit, and that he was not legally bound to apply said property, as in said agreement provided for, and that he dealt with the same as his own, and after the maturity of said note refused or neglected, upon the requisition of defendant, to apply said property, as in the agreement provided for, then the jury may find for the defendant.

3. If the jury find the agreement in writing between plaintiff and defendant, offered in evidence, and that the note sued on is the note mentioned in said agreement, and that the witness Boone conveyed the property mentioned in said agreement to plaintiff, and that said property was of the monthly value testified to by said Boone, and that after said conveyance and during the currency of said note, and afterwards, plaintiff permitted 'said Boone to take the rents of all said property and apply them to his, Boone's, own uses. and did not himself take said rents and apply the same towards payment of incumbrances upon said property, (if the jury shall find said property was in anywise encumbered,) or otherwise, according to said agreement, and did not pay, or cause to be paid, the semi-annual interest upon the mortgage on parcel of said property, (if the jury shall find such mortgage,) whereby a forfeiture of said mortgage was incurred, and did not use

such reasonable and speedy diligence and care, and such usual means of realizing said property as a faithful trustee and prudent man, bound to act for the benefit of defendant as well as himself, would have, and under the circumstances of this case, in dealing with said property for the common advantage, and that plaintiff conducted himself negligently in said business, then if the jury find that the value of said property was diminished by the misconduct and laches of plaintiff, he cannot recover against defendant.

4. If the jury believe that plaintiff paid over to the witness, Baldwin, the sum of $205, under the circumstances and for the purposes testified to by said Baldwin, and that the same was credited by the Mechanics Bank on the note now sued on in the suit brought against plaintiff by said bank, and the bank recovered and received from plaintiff the amount only of said note and interest, less the said sum of $205, then the plaintiff can recover no more in this suit as principal than he was compelled to pay to said Bank.

5. That by the true construction of said written agreement offered in evidence, the plaintiff cannot in any case recover more than one-half of the amount he was compelled to pay said Bank, viz., one-half of $436.

The Court granted the plaintiff's prayer, and rejected those of the defendant. The defendant excepted, and the verdict and judgment being against him he appealed.

The cause was argued before ALVEY, C. J., YELLOTT, STONE, ROBINSON, and BRYAN, J.

*Julian I. Alexander*, for the appellant.

*William M. Busey*, for the appellee.

STONE, J., delivered the opinion of the Court.

William P. Smith, the appellant, some time in 1883 endorsed a note for six hundred dollars, for a man named

Boone. This note was discounted for Boone, by the Nat. Mechanics Bank of Baltimore. When the note fell due, which it did on 8th October, 1883, Boone was unable to pay it, and it was renewed for ten days, by Boone giving another note, for same amount, also endorsed by Smith.

This man Boone, whose note Smith had endorsed, was the owner of some property in Baltimore City—some of it lying on Pratt and some on Dover street. The Pratt street property being encumbered with a mortgage.

About the time of Smith's endorsing this second note for Boone, it seems that Boone came to the conclusion that he could not pay the note, and offered to give Smith a deed for his property, that he might sell it and pay the notes. This Smith declined, on account of other business engagements. Boone then went to Alexander M. Briscoe, the appellee, and to whom he owed eight hundred dollars, and conveyed the property to him. Briscoe then agreed in writing with Smith, that when he sold the property, so conveyed to him by Boone, and had applied one thousand dollars to pay off the mortgage on it and eight hundred dollars to pay his, Briscoe's, own debt, the balance, to the amount of six hundred dollars, should be paid to Smith, on account of his liability, as endorser for Boone.

Briscoe at the same time agreed to endorse a note for Smith for six hundred dollars, so as to enable him, Smith, to take up the note he had endorsed for Boone. This note, so endorsed by Briscoe, was not paid at maturity, went to protest, and was finally paid by Briscoe, the endorser, who sued Smith the drawer. The defence set up by Smith was, that Briscoe had been guilty of negligence in the sale of the property, and owing to his negligent management the property failed to bring enough to pay the note according to the agreement.

It is, in our opinion, a doubtful question whether the doctrine of recoupment could properly apply to a case like the present, had the question been raised in the Court

below. It was not however made there, and we will treat Briscoe, as the appellant claimed he was, as a trustee to sell the property, pay one thousand dollars to a mortgagee and eight hundred to himself and six hundred of the residue, if any, to Smith.

It appears that Briscoe offered the Pratt street property for sale, before the maturity of the note that he had endorsed for Smith, but did not get a bid for it.

Shortly afterwards the *mortgagee* sold the property for $1550, which was nearly all taken up in payment of the mortgage debt, expenses, &c.

It also appears that Briscoe, some time afterwards, had an offer of $700 for the Dover street property. The encumbrances on it amounted to $290, and he, Briscoe, offered to divide the balance of $410 with Smith, if Smith would consent to the sale for that. To this Smith consented, and it was done—Smith receiving the $205.23.

These are all the facts necessary to state.

First as to the prayers. The plaintiff's prayer contained all the law applicable to the case. It placed the question of the plaintiff's negligence, which was the sole defence to the note, fairly before the jury, and directed them if they found that the property was not sold for enough to pay the $1800, prior liens, and that the plaintiff was not guilty of negligence, that then they should find for the plaintiff, for the amount of the note, less the $205.23 paid.

It is not necessary to discuss specifically the defendant's prayers, as we have said the prayer of the plaintiff covered the whole law applicable to the case ; some of defendant's prayers are unsupported by the evidence, and some are erroneous in theory.

We may say on this branch of the case that the agreement between Smith and Briscoe, upon which so much stress was laid, means clearly that Smith was to pay the note at maturity, unless in the meantime Briscoe should sell the property for more than the $1800.

Secondly, as to the admissibility of the evidence. It was shown by defendant that the Pratt street property had been sold at public sale by the mortgagee, and the sale ratified by a Court of competent jurisdiction; also that the plaintiff had offered the property at public sale without obtaining a bid. The defendant after offering the *record* to prove that the property sold for a certain sum, and that the sale had been ratified by a Court of competent jurisdiction, was precluded from attempting to show by parol that it was worth more—no fraud in such sale being charged.

Nor could the defendant be permitted to prove the value of the Dover street property, when he had agreed to its sale for a sum certain, and the Court below was clearly right in its ruling on the first and second exceptions.

The third exception presents a question of interest and importance, and upon which the law in some aspects seems to be unsettled. It is very true that in the case of the *Balto. & Ohio Railroad Co. vs. State, use of Woodward,* 41 *Md.,* 268, the Court ruled that a party calling a witness had not, *for the purpose of laying the foundation for impeaching him,* the right to ask the witness, whether he had not made a certain statement—different from that then testified to by him; and the Court refer to *Greenleaf* as authority.

*Greenleaf* states the general rule to be, that a party will *not be permitted to impeach the general reputation for truth,* or to impugn the credibility by *general evidence* of a witness he has called. This is the general rule, and accepted generally.

But the same author says that there exists some diversity of opinion, whether it is competent for a party to prove that a witness whom he has called, and whose testimony is unfavorable to his case, had previously stated the facts in a different manner. But the weight of authority,

he says, seems to be in favor of admitting the party to show that the evidence has taken him by surprise, or is contrary to what the party had reason to believe he would testify to.

If the witness has made to the party who calls him, or to the attorney of such party, a statement totally variant from his sworn testimony, and on the faith of such statement he has been called, he may be asked if he made such a statement, and if he denies it, we see no objection to the proof of such statement, not for the purpose of impeaching the general character of the witness, but for the protection of the party calling him. If a plaintiff calls a witness, relying upon statements *made to him or his attorney,* and when on the stand he proves the defendant's case, we think that the principles of justice require that the plaintiff should be able to show why he called him. There are objections to either course, but the more objectionable one would be to hold the party bound by the evidence of such treacherous witness. We restrict such declarations to those made to the party calling him or to his attorney, and made in reference to the case pending, and do not extend them to statements made to others. It is upon the statements so made to the party to the suit or his attorney that the witness is called. If the witness under such circumstances makes a false statement, he cannot complain that his falsehood is exposed.

But it is not every statement that may be made even to the party litigant or his attorney, that should be allowed to be contradicted by the party calling the witness. It should be left to the discretion of the Judge before whom the case is tried below to allow it to be done. The Court should be satisfied that the party has been taken by surprise, and that the evidence is contrary to what he had just cause to expect from the witness based upon his statements, and that such statements were about *material*

facts in the case. It is not every light or trivial circumstance that would justify it.

The attention of the Court in *Woodward's Case, supra,* did not seem to be drawn to the distinction made between statements made to the party or his attorney and to others. The statement in that case appears to have been made to some third party.

In the case of *Franklin Bank vs. Steam Navigation Co.,* 11 *G. & J.,* 28, the plaintiff took the testimony, under a commission, of two witnesses, one of them, Davidson, the agent of defendant, and they gave different versions of a conversation between them. The plaintiff wanted to offer the testimony of Mitchell, the other witness, to contradict that of Davidson as to these conversations. This the Court said, and we think rightly, could not be done.

So in *Sewell vs. Gardner,* 48 *Md.,* 178, the defendant took the testimony of a witness under a commission, and at the trial of the case offered the witness' letter to the defendant to impeach him, which the Court ruled out, and said that the opportunity to confront the witness with his letter was while he was testifying under the commission.

It will be observed that in none of these cases was the question directly raised, that the party calling the witness was taken by surprise, and that he had good reason to believe that the testimony would be different from what it was.

There can be no possible doubt that a witness who makes a false statement to a party or his attorney for the purpose of being called as a witness, is guilty of the grossest fraud which, if it can, ought to be exposed.

It follows from what we have said that the judgment must be affirmed.

*Judgment affirmed.*

(Decided 24th June, 1886.)