# THOMAS MURPHY *vs.* STATE OF MARYLAND.

*Witnesses: evidence in conflict with statements made to party calling him; contradiction of witness; discretion of Court. Motion to strike out all evidence: when to be overruled. Bills of exception: must contain one exception only.*

If a witness has made to the party who calls him or to his attorney a statement totally variant from his sworn testimony, and on the faith of which statement he was called, he may be asked if he made such former statement, and if he denies it, proof of the statement may be given, not for the purpose of impeaching the general character of the witness, but for the protection of the person calling him.                     p. 233

But not every statement that may be made, even to the party litigant or his attorney, may be contradicted by the party calling the witness; it is a matter for the discretion of the trial Court.                                              pp. 233-234

A bill of exceptions can not be made to embrace several exceptions to rulings on the evidence, and where a bill of exceptions includes more than one exception, it will not be considered by the Court of Appeals.                     pp. 234-235

A motion to strike out all the witness's testimony should be overruled, if any of the testimony is admissible.                     p. 236

In general, testimony is not admissible to contradict a witness, unless a foundation for it has first been laid.                     p. 236

*Decided April 8th, 1913.*

Appeal from the Circuit Court for Harford County (HAR-LAN, J.).

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Thomas H. Robinson* and *S. A. Williams,* for the appellant.

*Edgar Allan Poe, Attorney-General* (with whom was *J. Royston Stifler,* on the brief), for the appellee.

THOMAS, J., delivered the opinion of the Court.

The indictment upon which the appellant was tried and convicted in the Circuit Court for Harford County contained two counts, the first charging him with an assault with intent to kill, and the second with an assault and battery upon a certain Anthony Nusbaum. The jury found him guilty on the second count, and he was sentenced to pay a fine of $100 and costs and to confinement in the Maryland House of Correction for four months. From that judgment he has appealed.

During the trial the defendant reserved nineteen exceptions to the rulings of the Court on the evidence, but all of them present practically the same legal question.

The State offered the testimony of Anthony Nusbaum, the prosecuting witness, and Alethia James, tending to prove the alleged assault, and the testimony of William James to facts that occurred after the assault, and then produced the witness, William Hooper, who, after stating what occurred during the assault, testified that after the assault the defendant came back from his house to the barn where the witness and the defendant's brother, Cornelius Murphy, were; that he heard

the defendant say that he was "going to run them all off the place;" that Cornelius and the witness went up the steps leading to the upper part of the barn and that the defendant followed them, and that Cornelius struck the defendant and he fell down the steps. He was then asked by the State's Attorney, "With what did Cornelius hit him?" and he replied, "I don't know—I didn't see Cornelius what he hit him with; I was in the barn inside." To the question "Were you not on the steps?" he answered, "No, sir;" and the State's Attorney then asked the following question: "Didn't you tell me in my office there (indicating) you were on the steps and saw Cornelius hit him?" to which he replied, "No, sir; I didn't say I saw Cornelius hit him." When asked to state what happened after Cornelius knocked the defendant down the steps, he said he got up and went out, and in reply to the question, "What happened before he got up?" he replied "Why nothing." To the question "Didn't you say Cornelius hit him again in the barn?" he answered, "No, sir; I don't think Cornelius hit him but once; that was on top of the steps; I didn't see him hit him then." The State's Attorney then asked him, "Didn't you tell me this morning in my office—" and he replied "No, sir." The question was then completed—"that he beat him with a piece of ax handle?" and he answered, "No, sir; I never mentioned ax handle to you; never thought of it." The State then called Cornelius Murphy, the brother of the defendant, who testified that when he first saw the defendant and Nusbaum fighting they were down on the ground and Nusbaum was on top; that he didn't attempt to take Nusbaum off but told them to stop fighting; that they didn't pay any attention to him, and that finally the defendant "turned Nusbaum over and struck him in the head with a piece of tin;" that witness then undertook "to pull them apart," and that Nusbaum struck the defendant while the witness had hold of the defendant and "knocked him down and knocked him unconscious;" that when the defendant recovered consciousness he

was in a rage with witness because he had interfered and turned on him, and that witness struck him and injured his hand. The State's Attorney then said to witness, "Now, Mr. Murphy tell the gentlemen of the jury if it isn't a fact that when you went around there, Nusbaum was down and your brother Tom was beating him with a can top?" and he answered, "No, sir ; ; that is not right." When asked if he did not tell Dr. Famous and Clarence Wilson that night that that was true, he replied, "No, sir;" and he was then asked the following questions : "Did you tell either Clarence or Dr. Famous that night that you had—if you hadn't struck Tom and knocked him unconscious, at the time you broke your hand you believed he would have killed Nusbaum ?"

"Didn't you tell him (Clarence Wilson) if you hadn't taken your brother Tom off you believed he would have killed Nusbaum ?"

"Did you on the way over there (defendant's house) tell him (Dr. Famous) that you were sorry to have used Tom up, but if you hadn't done it you believed he would have killed Nusbaum ?"

"No words to that effect ?"

"Did you on the evening of this occurrence at Nusbaum's home, have a conversation with Mr. Nusbaum, in the presence of Mrs. Nusbaum, his wife, and did Nusbaum say to you he saw a dogwood club laying on the ground just after he passed the dairy, that he supposed Tom had picked it up and struck him with it, and did you say, 'No, I saw the club,' and that it was a sassafras ?"

To each of these questions the defendant objected, but the Court overruled the objections, and the witness answered that he did not make the statements referred to. The State then called Mrs. Nusbaum, Clarence Wilson and Dr. Famous, who were permitted, against the objection of the defendant, to testify that Cornelius Murphy made the statement referred to in said questions and other statements contradictory of his testimony in chief. These rulings of the Court below

are the errors complained of in the first, second, third, fourth, sixth, seventh, eighth, ninth, tenth, eleventh, twelfth, thirteenth, fourteenth, fifteenth, sixteenth and seventeenth bills of exceptions.

The rule in this State in regard to this character of evidence was definitely settled in the case of *Smith* v. *Briscoe,* 65 Md. 561, and repeated and re-affirmed, without any qualification, in the very recent case of *State* v. *B. & O. R. R. Co.,* 117 Md. 282, where it is said: "If the witness has made to the party who calls him, or to the attorney of such party, a statement totally variant from his sworn testimony, and on the faith of such statement, he has been called, he may be asked if he made such a statement, and if he denies it, we see no objection to the proof of such statement, not for the purpose of impeaching the general character of the witness, but for the protection of the party calling him. If a plaintiff calls a witness, relying upon statements made to him or his attorney, and when on the stand he proves the defendant's case, we think that the principles of justice require that the plaintiff should be able to show why he called him. There are objections to either course, but the more objectionable one would be to hold the party bound by the evidence of such treacherous witness. We restrict such declarations to those made to the party calling him or to his attorney, and made in reference to the case pending, and do not extend them to statements made to others. It is upon the statements so made to the party to the suit or his attorney that the witness is called. If the witness under such circumstances makes a false statement, he can not complain that his falsehood is exposed.

"But it is not every statement that may be made even to the party litigant or his attorney, that should be allowed to be contradicted by the party calling the witness. It should be left to the discretion of the judge before whom the case is tried below to allow it to be done. The Court should be satisfied that the party has been taken by surprise, and that

the evidence is contrary to what he had just cause to expect from the witness based upon his statements, and that such statements were about material facts in the case. It is not every light or trivial circumstance that would justify it."

It is apparent that the rulings of the Court below were in direct violation of the rule stated, and were calculated to injure the defendant. Some of the statements as to which Cornelius Murphy was interrogated, and to which the witness called to contradict him testified, were said to have been made in the presence of Anthony Nusbaum, and it is urged by the counsel for the State that the exception to the general rule in reference to statements made to a party to the suit should include statements to a prosecuting witness. But we can see no reason for extending the exception, for apart from the inconsistency of impeaching a witness whose credibility has been vouched for by calling him, further and more serious objection to such evidence is its tendency to confuse and mislead the jury, who, in criminal cases, are the judges of the law and facts, by diverting their attention from the evidence bearing directly upon the real issues involved, or causing them to give undue weight or significance to the statement sought to be established. The admission of such evidence should be strictly confined to the only purpose for which it is at all admissible, namely, to explain the surprise occasioned by contrary statements made to the *party* calling the witness or *his attorney* in reference to the pending case.

The fifth bill of exceptions states that "To each of said last five questions and answers the defendant, by his counsel, objected because the same were not pertinent to the inquiry, but the Court overruled the objection to such question and each answer, to which action of the Court the defendant objected, and prayed the Court to sign and seal this his fifth bill of exceptions," etc. Each ruling of the Court on the evidence should be made the subject of a separate exception. One bill of exceptions can not be made to embrace several exceptions to rulings on the evidence, and when it includes

more than one exception this Court will refuse to consider them. *Junkins* v. *Sullivan,* 110 Md. 539; *B. & O. R. R. Co.* v. *Rueter,* 114 Md. 687.

In the eighteenth exception the defendant objected to the State's Attorney testifying in the case. He was a competent witness and we see no ground for the objection.

After the objection was overruled, the State's Attorney testified as follows: "I want to say to your Honor, and gentlemen, that yesterday morning I took Hooper out the first opportunity I had to talk with him. I was going to take him in my office, but stopped at the door and asked him about this occurrence, and that he told me just a few minutes before we began this case, that in front of the dairy Tom was knocked in the ditch, that he didn't see the blow struck, he knew that Nusbaum didn't do it because Nusbaum was standing the other side of him, that he couldn't have done it, that he did go in the ditch at the command of Cornelius and choked him. He also told me that subsequently he came from the house, carrying a piece of board or a piece of plank and followed him up into the barn, and that Cornelius struck him and knocked him down the steps, and also told him if he got the first blow to hit hard, or Tom would clean him up, and as he came up Cornelius struck at him and knocked him down the steps, he then went down the steps after him and went on him with an ax handle and beat him. That was his statement to me a few minutes before he went on the stand." The nineteenth exception is to the refusal of the Court to grant the motion to strike out all of his testimony. The only purpose for which it was admissible was to contradict the testimony of the witness Hooper as to statements made by him to the *State's Attorney* and in regard to which he was examined while on the witness stand, and the only questions asked Hooper in reference to any such statements were: "Didn't you tell me in my office there (indicating) you were on the steps and saw Cornelius hit him?" and "Didn't you tell me this morning in my office that he beat him with a piece of ax handle?" In so far as the testimony of the

State's Attorney did not relate to the statements referred to in these questions it was clearly inadmissible, no foundation having been laid for such testimony. *Sewell* v. *Gardner,* 48 Md. 178; *Smith* v. *Briscoe, supra; State* v. *B. & O. R. R. Co., supra.* The motion, however, was to strike out *all* his testimony, and where such a motion is made, and any part of the evidence thus objected to is admissible, the motion should be overruled. *Jessup* v. *State,* 117 Md. 119. The record does not contain all the evidence produced at the trial, but as far as we can judge from the evidence before us the statements to which said questions refer do not relate to the offense charged in the indictment, but to matters occurring after the alleged assault, and constituting no part of the *res gestae.* It appears from the evidence that after the assault charged, the defendant went or was taken to his house, and that about ten minutes later he came to the barn where the witnesses, Hooper and Cornelius Murphy, were, and the statements in question were in reference to what then occurred between the defendant and his brother Cornelius, out of the presence of Nusbaum, and which Cornelius explained by stating that the defendant was mad with him because he claimed that Cornelius had interfered while he was defending himself against Nusbaum. There may have been evidence adduced to the trial which made what occurred afterwards between the defendant and his brother Cornelius pertinent and material, but there is no such evidence in the record, and the State should not have been allowed to contradict the witness as to an immaterial matter. *Handy* v. *Johnson,* 5 Md. 450; *Byers* v. *Horner,* 47 Md. 23; *Wright* v. *State,* 88 Md. 705; *Sloan* v. *Edwards,* 61 Md. 89; *City Pass. Ry. Co.* v. *Tanner,* 90 Md. 315.

Because of the errors in the rulings in the first, second, third, fourth, sixth, seventh, eighth, ninth, tenth, eleventh, twelfth, thirteenth, fourteenth, fifteenth, sixteenth, seventeenth and nineteenth bills of exceptions the judgment appealed from must be reversed and the case remanded.

*Judgment reversed and a new trial awarded.*