# CIRCUIT COURT OF BALTIMORE CITY.

Filed April 10, 1916.

FANNIE L. MYERS, ET AL.,
VS.
THE EUTAW SAVINGS BANK.

*Haman, Cook, Chesnut & Markell, Henry H. Meyers* and *John F. Smith* for plaintiffs.

*Randolph Barton, Jr.,* and *A. T. Brady* for defendant.

DAWKINS, J.—

The case herein presented is a proceeding by way of injunction to prevent the withdrawal of certain money standing on the books of the defendant bank as follows:

"Caroline F. Phelps, Julia V. Elliott, subject to the order of either and the survivor," to prohibit the payment of any part of said money to Julia V.

Elliott and to require the bank to pay over the same to Richard G. Elliott as executor of the last will and testament of the said Caroline F. Phelps.

The plaintiff charges that Caroline F. Phelps, being an old lady past 84 years of age and sick in body, placed her bank account in the form stated and introduced the name of Julia V. Elliott into it for the sole purpose of enabling the latter to hold said money in trust or as her agent and to withdraw such sums from the bank from time to time as might be needed for the immediate needs of Mrs. Phelps while ill, without any intention on the part of giving to Mrs. Elliott any portion of the said money, save such as is indicated.

The plaintiff further alleges that Mrs. Phelps had no other property or estate, except what was deposited in the defendant bank and that she had made a will making a certain disposition of her estate which could not be effective save by paying the same out of this money and by regarding the funds in the bank as her estate.

The plaintiff also says that the said Richard G. Elliott is the husband of Julia V. Elliott and will take no steps to collect and disburse said money as executor and that the said Julia V. Elliott has fraudulently refused to turn over the money to the executor.

The defendants, Julia V. Elliott and Richard G. Elliott, on the other hand, say that Mrs. Phelps voluntarily closed her bank account in her own name and made a new account in the name of Julia V. Elliott for the sole and only purpose of giving to Mrs. Elliott the entire fund. That Mrs. Elliott has had possession of and ownership over the bank book since the transfer and that exercising said ownership she drew money out of said account upon her own order after Mrs. Phelps' death. That as Mrs. Phelps left no estate, having given, prior to her death, all that she had to Mrs. Elliott, therefore she (Mrs. Elliott) claims said funds in bank by virtue of the gift and transfer to her and the delivery of the bank book. That Mrs. Phelps gave the money to Mrs. Elliott because it was inherited from the husband, R. Thompson Phelps, who was a brother of the mother of Richard G. Elliott, and for other reasons considered by the deceased at the time of the making of the gift.

Before passing upon the issues here involved, it is proper to pass upon the motions to strike out certain testimony admitted subject to exception. Unless the statements as to ownership of the money were made at the time of the gift in the presence of the donee, the same should not be admitted save on the ground of fraud or else upon considering the gift in effect a testamentary disposition. As these statements, including the will, tend to establish one or the other of these hypotheses, the exceptions to that part of the testimony admitting the will in evidence will be overruled.

The exceptions to statements made at or about the time of the transaction to disinterested persons will be overruled.

The exceptions to the testimony of witnesses who are interested, so far as it relates to conversations, etc., with Mrs. Phelps, are sustained.

The exceptions of the defendant to the testimony of Mrs. Elliott as to any conversations with Mrs. Phelps in regard to the transaction will be sustained.

With this elimination of testimony the facts upon which this case must be decided are comparatively few. The issue is a narrow one, but it is one of great importance—whether the wish of a decedent should be carried out or thwarted. We must try to arrive at the understanding that the deceased had as to the business in which she was engaged and her intention in regard to it. The deceased, Mrs. Phelps, was an old lady over 80 years of age, feeble in body and perhaps in mind. Mrs. Phelps had several nieces and nephews. Mrs. Elliott was one of the nieces. Relatives were not averse to having her money. They apparently paid no great attention to her while she lived. Some of the men of her family were more interested in her welfare than the women, yet these very men knew, be it said to their credit, that they were not to be beneficiaries of her bounty. It is hard to believe that anyone would take advantage of one in the condition of this old lady, yet what evidence of a definite character have we that would indicate an intention on her part to ignore the will which she had seemingly carefully guarded with her other papers of value? If she knew what

she was doing and intended giving all that she had to one niece, why didn't she say something about the will of which she had spoken and written as being in existence?

Gifts such as the one alleged here must be clear, free and removed from any uncertainty. If it be a gift it must be complete in all particulars. The burden, it seems to me, is on the donee to show the bona fides of the transaction. 113 Md. 278, Thiede vs. Startzman.

The possession of a savings bank book is by no means conclusive evidence of the ownership of a deposit, though it is some evidence of such ownership. To make ownership complete even with the possession of the book there must be an actual intentional delivery of the book and transfer of the account and it must go into effect at the time of the delivery and transfer. To these requisites there must be also an actual order to pay to the transferee. Here the book was given with the order signed under the circumstances hereinafter mentioned. What evidence is there that Mrs. Phelps intended to destroy her will, which this gift, if made, would do? Whilst Mrs. Elliott could have drawn the money, yet she seems to have recognized the fact that she only had the book and account as agent to draw such money as Mrs. Phelps needed, because she only drew for the old lady's expenses. If she (Mrs. Phelps) knew and intended this, there was no need for her to get back the book, though she asked for it and was told it was at the bank. It is a curious fact that Mrs. Elliott, who visited Mrs. Phelps somewhat infrequently, should have waited to come, some time after being requested to do so, bringing with her a power of attorney (which could only have been used for Mrs. Phelps' benefit) which she took to the bank, and upon being refused the money, she, after conferring with Mr. Hayden, the president of the bank, should without anyone knowing it, be given all of her money by her aunt. It is more reasonable and consistent to accept the circumstances of the signing of the paper as detailed by Dr. O'Mara, a disinterested witness, who is in most of the details corroborated by Mr. John Hammond, who also has no interest in the outcome of the case. It must be remembered, too, that after

Mr. Hayden explained the character of the transfer, Dr. O'Mara gave Mrs. Phelps his assurance that it was "all right" to sign, that it was only "transitory" or temporary and for the purpose of enabling funds to be drawn for present needs.

It does seem to me without further reviewing the testimony that this case should largely turn upon the testimony of Dr. O'Mara, who beyond doubt procured Mrs. Phelps' signature to the paper for the purposes above stated. His positive and clear statement (which is practically unimpeached) should not be disregarded by a mere technical possession of the bank book. His thought of her mental weakness is not inconsistent with his desire to get her signature to provide for her own present needs. All the admitted testimony clearly negatives the belief of any other or different intention on the part of Mrs. Phelps than that she was persuaded to let Mrs. Elliott, in whom she had confidence, *attend* to her money for the purpose of paying her board and other needs.

There are many circumstances that strengthen this conclusion, such as what occurred at the reading of the will, the secretiveness in regard to the transactions, etc.

I feel satisfied that Mrs. Phelps signed the paper putting the account in the name of herself and Mrs. Elliott merely to enable money to be procured for her need and maintenance.

The law of these cases was fully discussed by the respective counsel, but it seems to me the issue must be decided upon the intention of the deceased. Although numerous authorities have been cited in the arguments and briefs of counsel, it would seem that apart from the principle which is deemed controlling as above indicated, that the law controlling this case is fully announced in the cases of Milholland vs. Whalen, 89 Md. 199; Whalen vs. Milholland, 89 Md. 212; Taylor vs. Henry, 48 Md. 550; Stone vs. National City Bank, 126 Md. 231; Thiede vs. Startzman, 113 Md. 278.

For the reasons above given I think the money should be paid over to the executor of Caroline F. Phelps for administration in accordance with the terms of the will.

I will sign a decree in accordance with these views.