SELLMAN *v.* STATE

[No. 358, September Term, 1962.]

*Decided July 22, 1963.*

Submitted by *Milton B. Allen* and *Brown, Allen & Watts* for appellant.

Submitted by *Thomas B. Finan, Attorney General, Loring E. Hawes, Assistant Attorney General, William J. O'Donnell, State's Attorney* and *Howard G. Reamer, Assistant State's Attorney,* for appellee.

SYBERT, J., delivered the opinion of the Court.

The appellant, Norman James Sellman, was convicted by the Criminal Court of Baltimore, sitting without a jury, of attempting to obstruct justice, for which he was sentenced to imprisonment and to pay a fine. In this appeal he contends that the trial court erred in permitting the State to cross-examine one of its own witnesses, and that he was convicted upon the uncorroborated testimony of an accomplice.

Sellman and one Bryant Lofton, Jr., had been arrested in October 1961 and charged, in separate indictments, with violating the lottery laws. Both were released on bail. When the

cases were called for trial on November 14, 1961 the defendant Lofton did not appear and the cases were postponed. After several months Lofton was located in New York City by his bondsman. Upon being returned to Baltimore he told the police that his co-defendant, Sellman, had sent him out of the city because the latter did not wish the cases to be tried before Judge Carter, who was then sitting in the Criminal Court of Baltimore. Sellman was to call him back to Baltimore, he said, when Judge Carter's current assignment to the Criminal Court terminated.

At Sellman's trial in the instant case—for attempting to obstruct justice—Lofton testified to the same effect. He stated that on the day before the scheduled trial of the lottery charges Sellman, who was his employer at the "Reddy Cleaners", said that he was going to give him $50.00 and send him to his (Lofton's) sister's home in New York City, and that Sellman promised to forward $25.00 to him, addressed to his sister, each week. Lofton said he felt ill that evening and Sellman drove him from the cleaning plant to the office of a physician, but the latter was too busy to see him. He testified that Sellman then drove him to the home of Ossie Lee, Lofton's niece, with whom he lived, where the planned trip was discussed in the dining room in the presence of his niece, who, he said, "could hear everything that went on." Lofton said that he packed his clothes into a suitcase and that Sellman gave him $50.00 and drove him to the doctor's office again. When they found the doctor still busy, he said, Sellman drove him to the Greyhound Bus Terminal. There, Lofton took a bus to New York City, where he stayed at his sister's home. While in New York, Lofton received four envelopes, addressed to his sister, containing money from Sellman, according to Lofton. The envelopes, which were introduced in evidence, all contained a return address marked "Edward Barnes, 721 West North Avenue, Baltimore 17". That address, it was stated at the trial, was a tenement house operated by Sellman. The latter testified that he had had a person by that name living there a couple of years previously, who still received mail at that address. He denied that he had sent Lofton to New York, or had any conversation about it with anyone, or had given or forwarded any

money to Lofton. He admitted having taken Lofton from the cleaning plant to the doctor's office, and thence to the home of Lofton's niece, and again to the doctor's office, but maintained he had parted from Lofton there and did not take him to the bus terminal.

The appellant's first contention is that the lower court erred in permitting the State to cross-examine its own witness, Ossie Lee, as to the details of a prior statement made by her to police officers, which was inconsistent with statements made by her on the witness stand. Mrs. Lee testified on direct examination that Sellman and Lofton, her uncle, had come to her home together on the evening of November 13, 1961, and that she was with them in the dining room. When asked what Sellman had said, she replied: "Well, told me to help my uncle, told me to help him get his things ready, that he was going to New York and I did." However, when the State's Attorney asked her whether she had overheard a conversation engaged in between Lofton and Sellman in her presence, she was persistently evasive in her answers. At one point, in response to a question as to whether she had heard any conversation between Sellman and her uncle, she answered, "No, they evidently had their conversation before they got there." When a similar question was asked on another occasion she testified that she couldn't remember what had been said because she was upset at the time. Not meeting with any success in this line of questioning, which was intended to corroborate Lofton's testimony as to why he had gone to New York, the State's Attorney informed the court that he had been taken by surprise and requested an opportunity to cross-examine the witness as to a written statement given to the police in the State's Attorney's office wherein she had related the substance of a conversation between Lofton and Sellman. The appellant's objection to the State's Attorney's request was overruled.

Thereupon, under questioning by the State's Attorney, the witness admitted that she had made a statement to the police in the State's Attorney's office on April 13, 1962 concerning a conversation in her home on November 13, 1961 between Sellman and Lofton. After a few further questions about the statement, the witness' memory apparently improved. She then

testified substantively that she now recalled a conversation between the two men "about one of the judges", and that one of them had said, "He would be back then, whatever time that was, that it was supposed to be a new judge, which wouldn't be very long." Appellant now claims that there was no foundation laid for the introduction of the prior inconsistent statement because of the fact that the witness had never said "that the conversation the prosecutor was seeking did not take place for the simple reason that she was never asked." We do not agree.

Although the general rule is that a party may not impeach his own witness by proof of prior statements which are inconsistent with, or contradictory to, his testimony at the trial, it is well recognized in this State that where a party satisfies the court that he has been taken by surprise, and that the testimony is contrary to what he had a right to expect, it is within the sound discretion of the trial court to determine whether or not proof of prior inconsistent statements should be permitted. See *Bruce v. State,* 218 Md. 87, 145 A. 2d 428 (1958) ; *Meyerson v. State,* 181 Md. 105, 28 A. 2d 833 (1942) ; *Murphy v. State,* 120 Md. 229, 87 Atl. 811 (1913) ; and *Smith v. Briscoe,* 65 Md. 561, 5 Atl. 334 (1886). See also *Parker v. State,* 227 Md. 468, 177 A. 2d 426 (1962) ; 4 *Jones, Evidence* (5th ed.), §§ 941, 942; 58 Am. Jur., *Witnesses,* § 792; 4 U. Chi. L. Rev. 69. The right to prove prior inconsistent or contradictory statements is limited, however, to statements made to the party seeking to cross-examine the witness, or his attorney, or to some other person to be communicated to them, *Parker v. State, supra,* and the statement must involve material facts in the case. *Meyerson v. State, supra.*

In the instant case it was apparent from the prosecutor's persistent questioning of Mrs. Lee that he had knowledge that she had heard a conversation between Lofton and Sellman material to the case. It was not until the witness had been afforded ample opportunity to relate the details of the overheard conversation and had, in effect, refused to do so, that the State claimed surprise and requested permission to cross-examine her. The argument of the appellant overlooks the witness' flat denial that any conversation between the parties had taken place when she said, "No, they evidently held their conversa-

tion before they got there." This assertion was in direct conflict with the statement which Mrs. Lee had given to the police in the State's Attorney's office. The State used the prior inconsistent statement only after laying a proper foundation by asking the witness whether she had made the statement, giving its substance and naming the time, the place and the person to whom made. See *Joppy v. Hopkins,* 231 Md. 52, 56, 188 A. 2d 545 (1963), and cases cited; see also *McCormick, Evidence* (1954), § 34. For these reasons we find no abuse of the trial court's discretion in permitting the introduction of Mrs. Lee's statement.

We now come to appellant's contention that the testimony of Lofton, who he claims was an accomplice, was not sufficiently corroborated to sustain the conviction. However, even if we assume, without deciding, that Lofton was an accomplice of the appellant, still there was, we think, ample corroboration of his testimony to support a finding of the appellant's guilt. The rules as to the quantum of evidence required to corroborate the testimony of an accomplice were thoroughly reviewed in the recent case of *McDowell v. State,* 231 Md. 205, 189 A. 2d 611 (1963). There it was pointed out that the cases hold, *inter alia,* that not much in the way of corroboration is required; that the corroborating testimony need only support some of the material points of the accomplice's testimony; and that corroboration may come from the defendant himself.

Most of the material facts related by Lofton were adequately corroborated. His version of events was supported by Ossie Lee's substantive testimony that Sellman and Lofton came to her home together on the night of November 13, 1961, that Sellman told her to get Lofton's clothes ready as he was going to New York, and that she overheard a conversation between the two men in which it was said, in effect, that Lofton was not to come back until there was a "new judge". That Lofton went to New York and was found by his bondsman at the home of his sister verify that part of his testimony. The envelopes addressed to Lofton's sister in New York and bearing the return address of a tenement house operated by Sellman, tend to corroborate Lofton's statements that Sellman promised to, and did, send money to him. In addition, the appellant's own

testimony that he was in Ossie Lee's home on the evening of November 13, 1961, and took Lofton to a doctor twice (the second time having been just before Lofton's departure for New York), is corroborative of Lofton's testimony.

Having found no error below, we shall affirm.

*Judgment affirmed; costs to be paid by appellant.*