## SHAFFER BALDWIN *v.* STATE OF MARYLAND

[No. 287, September Term, 1967.]

24

*Decided August 19, 1968.*

The cause was argued before MURPHY, C.J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Edward J. Birrane, Jr.,* for appellant.

*Edward S. Digges, Special Assistant Attorney General,* with

whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Michael E. Kaminkow, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

ANDERSON, J., delivered the opinion of the Court.

On May 19, 1967, the appellant, Shaffer Baldwin, was tried in the Criminal Court of Baltimore by a jury, Judge Albert L. Sklar presiding, upon a five count indictment charging robbery, assault with intent to rob, common law assault, larceny, and receiving stolen goods. The appellant was found guilty of robbery. A Motion for a New Trial was filed on May 24, 1967, and denied after a hearing on June 27, 1967. Appellant was then sentenced to five years imprisonment under the jurisdiction of the Department of Correction, with the court's recommendation that he be referred to the Patuxent Institution for evaluation as a possible defective delinquent.

Appellant raises four contentions on appeal:

1. That the trial court committed reversible error in refusing appellant's Motion for a Mistrial when it was discovered that the foreman of the jury had failed to properly answer one of the questions asked him on his voir dire.

2. That the trial court committed reversible error in refusing to grant appellant's Motion for a Mistrial when the prosecutor cross-examined his own witness without laying a proper foundation therefor, questioned the witness on prior Grand Jury testimony in front of the jury in an attempt to establish surprise, and made reference to the prior Grand Jury testimony by the witness in his closing argument to the jury.

3. That the trial court committed reversible error in refusing to grant the appellant's Motion for a Mistrial after the prosecutor made prejudicial remarks in front of the jury implying that counsel for the appellant was guilty of suppressing evidence.

4. That the trial court committed reversible error in admitting the photographs of the accused and five others into evidence without laying a proper foundation and in

view of testimony that these were the only photographs shown an eyewitness to the crime some three weeks after the crime.

The record below discloses that the jurors were subjected to a voir dire examination, inclusive of the inquiry, ". . . . have you or any member of your immediate family ever been the victim of a crime? If so, would you kindly raise your right hand?" There was no response. After the jury was sworn, counsel advised the judge that the jury foreman was at that time a complaining witness in a juvenile court proceeding. Defense counsel, out of the jury's presence, argued for a mistrial based upon the foreman's failure to answer to this voir dire. The court was advised by appellant's counsel that the foreman had evidenced hostility toward the police and the juvenile authorities. After due consideration, the court found no basis for the alleged prejudice and denied the mistrial.

The State first called the victim of the assault and robbery, Henry Tolson, who identified himself as an insurance collection agent, and testified that on July 28, 1966, while making his rounds in the 2500 block of McHenry Street, Baltimore, he was assaulted and robbed by "two or three" persons. After a brief struggle, he passed out and was unable to identify any of his assailants.

The State next called Eric Livingston, an eyewitness to the crime. He testified that he saw the attack, but observed the appellant across the street from the attack, at that time, and that the appellant was not involved therein. To this testimony, the assistant State's attorney inquired, "Now Eric, do you remember testifying before the Grand Jury?" To which the witness responded, "No, sir." The appellant's counsel objected at this point and a bench conference ensued, wherein the assistant State's attorney claimed surprise. The trial judge accepted the claim and directed that a proper foundation be laid. The assistant State's attorney then proceeded with the cross examination, to which the appellant's counsel objected. The trial court sustained the objection, directing the assistant State's attorney to refrain from "going into detail" in the form of questions propounded. The cross examination continued with the court care-

fully explaining to the jury that examination of the State's own witness was allowed in order "to explain to the jury why he was called as a witness in the first place." The court further informed the jury "[t]hat what is adduced here by means of cross examination is not to be considered as substantive evidence in the case."

The State's next witness was Mrs. Carrie Ford who testified that she observed the assault and robbery of Mr. Tolson, from the vantage point of her bedroom window. She positively identified the appellant as one of five assailants. On cross examination, the witness was confronted with a photograph of the scene evidencing trees in front of her house. On redirect, the assistant State's attorney elicited from the witness that while a tree hides the window, wherefrom she observed the incident, that "if you're standing at the window it's a very clear view, it's nothing there to keep you from seeing. You can see very well." Thereupon, the assistant State's attorney stated that the appellant's counsel had other photographs, the withholding of which was detrimental to the case. A bench conference was held wherein the appellant's counsel stated that the other photographs constituted a work product and that the remarks made in front of the jury were highly prejudicial. A mistrial was requested and denied, after which the judge directed the jury to disregard the comment made by the assistant State's attorney.

The State's final witness was Officer Joseph Cook of the Baltimore City Police Department, who testified that he had presented Mrs. Ford with six photographs nearly three weeks after the robbery from which she selected the photographs of the appellant and one David Maith. The photographs were then introduced into evidence over objection. The State did not identify the nature of the photographs, who took them, or where they came from.

A Motion for Judgment of Acquittal was made at the close of the State's case, which the trial judge denied.

The assistant State's attorney argued to the jury in his closing argument, that the witness, Eric Livingston, had made statements to the Grand Jury which were contrary to those made on

the stand. Appellant's counsel objected and moved for a mistrial, which was denied by the court.

Appellant's first, second, and third contentions shall be treated together. The granting of a mistrial is an exercise which rests within the discretion of the trial judge. A mistrial should be granted only where plain and obvious reasons exist, upon the greatest caution and under urgent circumstances. Where, in the exercise of this discretion, the trial court refuses to grant a mistrial, such a decision will not be disturbed on appeal without giving full regard to the fact "that the trial court is in an advantageous position to judge the question of prejudice, and its decision with reference thereto should not be reversed unless it is clear that there was prejudice." *Carroll v. State,* 3 Md. App. 50, 53, 237 A. 2d 535, 538 (1968) quoting *Cook v. State,* 225 Md. 603, 610, 171 A. 2d 460, 463, cert. den. 368 U. S. 970, 82 S. Ct. 445, 7 L. Ed. 2d 398 (1961).

After examining the aforenoted information regarding the foreman, the trial judge found that there was an insufficient showing of prejudice to the appellant in that his counsel argued that the juror "could be prejudiced" only, and that in light of the foreman's alleged attitude of hostility toward the police, the judge stated that it would be just as likely that the foreman would be inclined to favor the appellant. It is clear that the appellant failed to satisfy his burden of showing that the foreman was not impartial. See *Jones v. State,* 2 Md. App. 429, 431, 234 A. 2d 900, 901 (1967). Prejudice must be shown as a "demonstrable reality" and not as a "matter of speculation." *Darcy v. Handy,* 351 U. S. 454, 462, 76 S. Ct. 965, 100 L. Ed. 2d 1331 (1956).

Only where the prejudice is manifest will the finding of impartiality be set aside by the trial court. *Irvin v. Dowd,* 366 U. S. 717, 724, 81 S. Ct. 1639, 6 L. Ed. 2d 751 (1961). Here, the allegation of prejudice is so speculative as to leave appellant's first contention devoid of merit. Moreover, we think the witness answered the voir dire question truthfully, since he was not the victim of a crime but had only initiated a juvenile proceeding against a youth who had called him "weird."

With respect to the alleged prejudice to the appellant in the trial judge allowing the State to impeach its own witness, it is

well to reiterate what the Court of Appeals in *Green v. State,* 243 Md. 154, 220 A. 2d 544, 546 (1966) stated at page 157:

> "Although the general rule is that a party may not impeach his own witness by proof of prior statements which are inconsistent with, or contradictory to, his testimony at the trial, it is well recognized in this State that where a party satisfies the court that he has been taken by surprise, and that the testimony is contrary to what he had a right to expect, it is within the sound discretion of the trial court to determine whether or not proof of prior inconsistent statements should be permitted. *Sellman v. State,* 232 Md. 344, 348, 192 A. 2d 788 (1963) and authorities therein cited. * * * The purpose of such a showing, if a proper foundation has been laid, is to protect the party who put him on the stand. *Smith v. Briscoe,* 65 Md. 561, 569-70, 5 Atl. 334 (1886). Recourse to the right is confined to cases where the party calling the witness has been misled and surprised, or entrapped to his prejudice. *Bruce v. State,* 218 Md. 87, 94-95, 145 A. 2d 428 (1958)."

Once a foundation of surprise is laid to the court's satisfaction, the impeachment process is justified and prior inconsistencies may be proven. See *Green v. State, supra.*

In the instant case, the trial judge carefully examined the State's claim of surprise and upon being satisfied as to its veracity, allowed the laying of the foundation for the impeachment process. This impeachment process by cross examination was directed toward prior inconsistent statements, the proof of which was properly admitted by the trial judge. Here, the trial judge cautioned the jury that whatever would be brought out in the course of the cross examination was to be considered for "one limited purpose, not as the purpose of substantive evidence, which is evidence on which you base a finding of fact. The only purpose of this is to permit the State to inform the court and you as the jury the reason why he, this witness, was called to the stand in the first place. But for no other reason is this cross examination allowed." Based upon

these considerations, we find the trial judge properly exercised his discretion by denying the motion for a mistrial.

Appellant further contends that the State's improper argument to the jury wherein mention was made that the witness Livingston "had made a prior statement to the Grand Jury different," was sufficiently prejudicial to warrant a mistrial and that the trial court's refusal to so rule constitutes reversible error.

The record reflects that the trial judge immediately interrupted the State and instructed the jury that the only evidence of prior inconsistent statements arose on cross examination and that the State's proffer did not constitute evidence; and that furthermore, nothing brought out on cross examination was to be considered as substantive evidence. It is clear that the trial judge from his vantage point of having the opportunity to hear the attorney as well as to appraise the effect of his words on the jurors before him, is "of necessity empowered with wide discretion in deciding whether the prejudicial effect of counsel's remarks can be erased by corrective instructions or if a mistrial is required." *Leach v. Metzger,* 241 Md. 533, 537, 217 A. 2d 302, 304 (1966). We find that the trial judge properly exercised the discretion vested in him and effectively cured the potential prejudice of the improper argument by his admonition to the jury.

Appellant's final contention is devoid of merit. The State's witness, Mrs. Carrie Ford, testified that she had identified from six photographs presented to her by the police, the appellant and another as assailants of the victim, Henry Tolson. Officer Cook testified to having presented a group of six photographs to Mrs. Ford and that she identified the appellant and one David Maith, as the assailants. These photographs were admitted into evidence over the objection of the appellant.

The thrust of the appellant's final contention is that these photographs used in the extrajudicial identification were inadmissible absent a proper foundation and principally, that the showing of the photographs to Mrs. Ford by Officer Cook is analogous to a lineup and therefore subject to the strictures enunciated in *United States v. Wade,* 388 U. S. 218, 87 S. Ct. 1926, 18 L. Ed. 2d 1149 (1967), construing such to be a

critical stage affording the right to representation by counsel. However, it is clear that even if there was merit to this analogy, *Wade* would be inapplicable as the instant identification occurred nearly three weeks after the occasion of the crime on July 28, 1966, and as was stated in *Stovall v. Denno,* 388 U. S. 293, 87 S. Ct. 1967, 18 L. Ed. 2d 1199 (1967), *Wade* applies only to those lineups occurring after the date of its decision, June 12, 1967. Furthermore, we hold that the *Wade* strictures are inapplicable to photographic identifications.

The question of the practice of extrajudicial photographic identifications was answered in *Simmons v. United States,* 390 U. S. 377, 384, 88 S. Ct. 967, 971, 19 L. Ed. 2d 1247 (1968), wherein Mr. Justice Harlan stated:

> "Despite the hazards of initial identification by photograph, this procedure has been used widely and effectively in criminal law enforcement, from the standpoint both of apprehending offenders and of sparing innocent suspects the ignominy of arrest by allowing eyewitnesses to exonerate them through scrutiny of photographs. The danger that use of the technique may result in convictions based on misidentification may be substantially lessened by a course of cross-examination at trial which exposes to the jury the method's potential for error. We are unwilling to prohibit its employment, either in the exercise of our supervisory power or, still less, as a matter of constitutional requirement. Instead, we hold that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. This standard accords with our resolution of a similar issue in *Stovall v. Denno,* 388 U. S. 293, 301-302, 87 S. Ct. 1967, 1972-1973, and with decisions of other courts on the question of identification by photograph."

It is clear that where a witness has previously identified a photograph of the defendant, such testimony is admissible. See *Judy v. State,* 218 Md. 168, 172-176, 146 A. 2d 29, 31 (1958) ; *Austin v. State,* 3 Md. App. 231, 236, 238 A. 2d 569, 573 (1968). Furthermore, an extrajudicial identification is admissible where the circumstances surrounding same are conducive to fairness, integrity and reliability. *Bean v. State,* 234 Md. 432, 444, 199 A. 2d 773, 779 (1964) ; *Proctor v. State,* 223 Md. 394, 400, 164 A. 2d 708, 712 (1960).

In the instant case, we find that the extrajudicial identification, testimony relevant thereto, and the admission of the challenged photographs were not prejudicially inspired, as the witness Ford had ample opportunity to become fully familiarized with the features of the assailants during her observation of the robbery. See *McRae v. State,* 3 Md. App. 388, 392, 239 A. 2d 607, 609 (1968). Furthermore, we find nothing in the composition nor presentment of the instant photographs to reflect unfavorably upon their fairness, integrity or reliability in rendering an objective non-suggestive identification.

*Judgment affirmed.*